# Exhibit CC

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| ━━━━━━━━━━━━━━━━━━ | CIVIL ACTION NUMBER: |
| MITSUBISHI TANABE PHARMA | |
| CORPORATION, et al. | 17-5005 |
| | |
|     Plaintiffs, | ORAL ARGUMENT VIA |
| | TELECONFERENCE |
|     v. | |
| | |
| AUROBINDO PHARMA USA, INC., | |
| et al., | |
| | |
|     Defendants. | |
| ━━━━━━━━━━━━━━━━━━ | |

Tuesday, April 14, 2020
Commencing at 2:00 p.m.

**B E F O R E:**          THE HONORABLE JOEL SCHNEIDER,
                         UNITED STATES MAGISTRATE JUDGE

**A P P E A R A N C E S:**

       SAUL EWING ARNSTEIN & LEHR LLP
       BY:  WILLIAM C. BATON, ESQUIRE
       One Riverfront Plaza, Suite 1520
       Newark, NJ 07102-5426
       For the Plaintiff

       QUINN EMANUEL URQUHART & SULLIVAN, LLP
       BY:  COLLEEN TRACY JAMES, ESQUIRE
            RAYMOND N. NIMROD, ESQUIRE
            CATHERINE T. MATTES, ESQUIRE
            BRIAN FORSATZ, ESQUIRE
       51 Madison Avenue
       New York, NY 10010
       For the Plaintiff


            Karen Friedlander, Official Court Reporter
                 friedlanderreporter@gmail.com
                       (856) 756-0160

       Proceedings recorded by mechanical stenography;
     transcript produced by computer-aided transcription.

1  **A P P E A R A N C E S: - CONTINUED**

2       RAKOCZY MOLINO MAZZOCHI SIWIK
        BY:  DEANNE MAZZOCHI, ESQUIRE
3            MATTHEW ANDERSON, ESQUIRE
        6 West Hubbard Street
4       Suite 500
        Chicago, Illinois 60654
5       For the Defendant Lupin

6       CARELLA BYRNE CECCHI OLSTEIN BRODY & AGNELLO, P.C.
        BY:  MELISSA E. FLAX, ESQUIRE
7       5 Becker Farm Road
        Roseland, NJ 07068
8       For the Defendant Lupin

9       HILL WALLACK LLP
        BY:  ERIC I. ABRAHAM, ESQUIRE
10      21 Roszel Road
        Princeton, NJ 08540
11      For the Defendant Sandoz

12      BRINKS GILSON & LIONE
        BY:  MARK H. REMUS, ESQUIRE
13           JOSHUA H. JAMES, ESQUIRE
        455 N. Cityfront Plaza Drive
14      Chicago, IL 60611
        For the Defendant Sandoz
15
        COSNER YOUNGELSON
16      BY:  REBECCA HAND, ESQUIRE
             MARC D. YOUNGELSON, ESQUIRE
17      197 Route 18, Suite 104
        East Brunswick, NJ 08816
18      For the Defendant Aurobindo

19      WITHERS BERGMAN LLP
        BY:  STEVEN J. MOORE, ESQUIRE
20           JAMES NEILON, ESQUIRE
        1700 East Putnam Avenue
21      Greenwich, CT 06830
        For the Defendant Aurobindo
22
        SAIBER LLC
23      BY:  SEAN R. KELLY, ESQUIRE
        18 Columbia Turnpike,  Suite 200
24      Florham Park, NJ 07932
        For the Defendant Zydus

25

1    **A P P E A R A N C E S: - CONTINUED**

2    KASOWITZ BENSON TORRES LLP
     BY:  HERSHY STERN, ESQUIRE
3         TREVOR WELCH, ESQUIRE
     1633 Broadway
4    New York, NY 10019
     For the Defendant Zydus
5
     FLASTER GREENBERG PC
6    BY:  JEFFREY A. COHEN, ESQUIRE
     1810 Chapel Avenue West
7    Cherry Hill, NJ 08002
     For the Defendant Laurus Labs
8
     STERNE KESSLER GOLDSTEIN & FOX
9    BY:  JOSEPH KIM, ESQUIRE
     1100 New York Ave, NW Suite 600
10   Washington, DC 20005
     For the Defendant Laurus Labs
11
     MIDLIGE RICHTER LLC
12   BY:  JAMES S. RICHTER, ESQUIRE
     645 Martinsville Road
13   Basking Ridge, NJ 07920
     For the Defendant MSN
14
     WINSTON & STRAWN, LLP
15   BY:  JOVIAL WONG, ESQUIRE
          SHARON LYNN, ESQUIRE
16   1901 L Street NW
     Washington, D.C. 20036
17   For the Defendant MSN

18

19

20

21

22

23

24

25

1          THE COURT:  Okay.  Let's go on the record now.

2    We're on the record in the matter of Mitsubishi, Docket No.

3    17-5005.  I suppose everyone wants to enter their appearance

4    on the docket, so why don't we start with plaintiffs' counsel,

5    and then we will go to defense counsel.

6          MR. BATON:  Good afternoon, Your Honor, this is Bill

7    Baton of Saul Ewing Arnstein & Lehr, New Jersey counsel for

8    plaintiff.  I did try to coordinate with all parties to send

9    around a service -- a list of all participants for each of the

10   parties, and hopefully, you got that.  I also sent it to

11   Ms. Eckert as well.  I'll let my co-counsel introduce

12   themselves as well.

13         MS. JAMES:  Good afternoon, Your Honor, this is

14   Colleen James of the Quinn Emanuel firm for plaintiff.  Also

15   with me on the line are my colleagues also from Quinn Emanuel,

16   Ray Nimrod, Catherine Mattes, and Brian Forsatz.  Thank you,

17   Your Honor.

18         THE COURT:  Thank you.

19         All right.  There's also defense counsel on the

20   phone.  Why don't we start by whoever is going to be the lead

21   in terms of oral argument and then everybody can say their

22   name.

23         MS. MAZZOCHI:  Thank you, Your Honor.  Good

24   afternoon, this is Deanne Mazzochi, D-E-A-N-N-E, Mazzochi,

25   M-A-Z-Z-O-C-H-I, for the Lupin defendants.  I'm also joined by

1    my colleague Matt Anderson and local counsel Melissa Flax.

2         MS. FLAX:  Good afternoon, Your Honor.  Melissa Flax

3    from Carella Byrne on behalf of Lupin defendants.

4         THE COURT:  All right, defendants, if you want to

5    enter your appearance, feel free to.  If you want to wait,

6    that's fine with the Court as well.

7         MR. ABRAHAM:  Good afternoon, Your Honor, this is

8    Eric Abraham from Hill Wallack in Princeton.  I represent

9    Sandoz.  I'm joined on the call by Mark Remus and Joshua James

10   from Brinks Gilson also on behalf of Sandoz.

11        MS. HAND:  Good afternoon, Your Honor, this is

12   Rebecca Hand from Cosner Youngelson, local counsel for

13   Aurobindo.  On the line with me is Marc Youngelson also from

14   Cosner Youngelson and James Neilon and Steve Moore from

15   Withers Bergman.

16        MR. KELLY:  Good afternoon, Your Honor, this is Sean

17   Kelly of the Saiber Law Firm, local counsel for Zydus, and

18   with me on the call are Hershy Stern and Trevor Welch of the

19   firm of Kasowitz Benson Torres.

20        MR. COHEN:  Good afternoon, Your Honor, this is

21   Jeffrey Cohen from the law firm of Flaster Greenberg.  I'm

22   local counsel for Laurus Labs, and with me on the phone is

23   Joseph Kim from the law firm of Sterne Kessler Goldstein &

24   Fox.

25        MR. RICHTER:  Good afternoon, Your Honor, James

1    Richter of Midlige Richter on behalf of MSN and with me on the

2    line is Jovial Wong and Sharon Lynn, both from Winston &

3    Strawn.

4         THE COURT:  Okay.  Why don't we do this, then.

5    There's probably other people on the phone, but whoever's

6    going to talk, do announce your name for the benefit of the

7    court reporter, so she can take the transcript down.

8         We're here for oral argument on plaintiffs'

9    application submitted on March 20, 2020, Docket No. 278.  The

10   Court has read all the submissions of the parties.  I think it

11   understands the issues, but anticipates that this oral

12   argument will be very helpful.

13        I want to start by just setting a couple of ground

14   rules for the oral argument.  This case is a little bit

15   different than most of my cases.  This is, in my view, an

16   exceedingly complicated issue that involves a detailed

17   comparison of the two subject expert reports and the lengthy

18   contentions that were filed earlier in the case.

19        We're all proceeding under a little bit of a handicap

20   these days because of the coronavirus situation.  Ordinarily,

21   we would hold this argument in person, but clearly, because of

22   the current circumstances, we have to do this by phone, which

23   is not ideal, but it's certainly better than nothing.

24        The Court wants to advise you at the outset of this

25   argument that I will reserve decision today.  I don't

1  ordinarily do that, I like to rule on the record when there's

2  argument, but these issues, in my view, are too complicated to

3  jump into the same day as oral argument.

4         What I anticipate is either after we digest the

5  argument today and the Court goes back and does a little bit

6  of homework, I'm either going to schedule a second oral

7  argument to fine-tune some questions the Court has, or I'll

8  issue an oral opinion on the record with an order to be

9  followed.

10        Like you, our office is closed, we're working

11  remotely.  So it's a little bit more cumbersome for the Court

12  to write a lengthy opinion, but I can certainly read a

13  decision into the record.

14        I'm aware of the scheduling deadlines in the case.

15  All present scheduling deadlines shall remain in place.  The

16  final pretrial conference I know is scheduled on June 1.

17  Trial is scheduled on June 22nd, and as far as I'm concerned,

18  unless someone says the trial is going to be delayed or

19  postponed, it's full speed ahead.

20        The way I'd like to proceed is, it appears to the

21  Court and we'll clarify this, that there were three general

22  subject areas of dispute, and what I'd like to do is deal with

23  one at a time and hear the argument of plaintiffs, since

24  they're the moving party, and exhaust the argument on the one

25  point and then move on to the second and third point.

1    I don't want to waste time on issues that are not

2  material to the Court's decision.  So there are one or two

3  points that I just want to make clear up front so you don't

4  have to waste your time arguing about it.

5    The first point is that the Court rules and finds

6  that plaintiffs' application is ripe for decision and the

7  Court will not hold off on ruling on the dispute for a motion

8  in limine or an objection at trial.  So that argument is

9  rejected.

10    The second point is, and this was alluded to in

11  plaintiffs' argument, the Court does not accept the argument

12  that defendants, in essence, admitted the subject expert

13  reports violated the local patent rules because they offered

14  compromises in the context of the parties' meet-and-confer

15  session.  So there's no need to raise that point.

16    And the third point is, the Court is skeptical of the

17  argument, if it's made, that plaintiff waited too long to

18  raise these alleged deficiencies.  In the Court's view, the

19  burden is on the defendant to comply with the local rules, and

20  in the absence of any evidence of sandbagging or bad faith,

21  the Court is not going to put the burden on plaintiff to point

22  out to the defendant the deficiencies in their contentions.

23  And the Court has seen no evidence on either side of any bad

24  faith or shenanigans.

25    So those are the three points that the Court has

1  already concluded on.  I wanted to make that clear, so we

2  don't have to waste time on those arguments.

3          I'm familiar with the issues in dispute.  We're

4  dealing with plaintiffs' application to strike portions of the

5  expert report of Dr. Eckhardt and Dr. Cockcroft that were

6  served on or about February 7, 2020.

7          The essence of plaintiffs' argument is that portions

8  of those expert reports set forth new invalidity theories and

9  new cited references that violate the strictures of local

10 Rules 3.3 and 3.7.

11         The Court is aware that the defendants' joint

12 invalidity contentions were served on March 30, 2018.

13 Plaintiff responded on June 29th, 2018.  Sandoz's contentions

14 were filed on March 30, 2018.  They supplemented those

15 contentions, Sandoz did on September 19, 2018.  On

16 November 12, 2018, plaintiff responded to Sandoz's

17 supplemental contention, and as the Court noted, the expert

18 reports at issue were served on February 7, 2020.

19         Plaintiffs' application was filed on March 20, 2020,

20 about a month-and-a-half later, and we know that the trial

21 date is June 22nd, 2020.

22         I'd just like confirmation from the parties so we're

23 all on the same page.  I know there's subsets of arguments for

24 the three general areas, but it appears to the Court that the

25 three general objections are as follows:  As to obviousness,

1    plaintiff is contesting Paragraphs 299, 365 of the Eckhardt

2    report.  As to anticipation in 326, Paragraphs 253 to 298 and

3    the third general argument is the Section 112 invalidity

4    argument, Paragraphs 95 to 142 of Cockcroft's report.

5              Counsel, with that background, does the Court have it

6    correct at least as of now?

7              MR. BATON:  Your Honor, this is Bill Baton, New

8    Jersey counsel for plaintiffs.  Just one slight correction.

9    Our initial letter was filed on March 2nd, 2020, our reply was

10   March 24.  We were planning to have me speak a little bit with

11   Your Honor about local patent rule issues and my colleague

12   Colleen James from Quinn Emanuel was going to address the more

13   substantive issues with respect to your queries just now.  So

14   I'll let Ms. James answer that and then we can continue.

15             THE COURT:  Mr. Baton, if you don't mind, the Court

16   is very familiar with the local patent rules.  You've probably

17   read my opinions on the local patent rules.  I know all about

18   Rule 15, I know all about Sanders in the patent rules.

19   They're not the same as Rule 15.

20             So I don't mean to take the wind out of your sails,

21   but would there be any objection if we just get to the crux of

22   these issues rather than the background that the Court is

23   already familiar with.

24             MR. BATON:  Sure, Your Honor.  This is Bill Baton

25   again.  I obviously will defer to the Court's wishes on how to

1  structure the argument.  The only thing I would ask the

2  Court's indulgence would be, if you are asking a question of

3  my colleague, your specific questions and it somehow may touch

4  upon an argument that we have that's grounded in local patent

5  rules, that you allow me to, you know, pinch hit for that, so

6  to speak, and at least cut the background.

7          THE COURT:  Absolutely.  No problem at all.

8          MR. BATON:  Thank you, Your Honor.

9          THE COURT:  I just -- let's start with -- just so I

10  at least have the three general disputes correct, the

11  obviousness argument, the anticipation argument, and the

12  Section 112 argument.

13          MS. JAMES:  Your Honor, this is Colleen James and for

14  plaintiffs we agree that those are the three main categories

15  at issue for discussion today.

16          MS. MAZZOCHI:  And this is Ms. Mazzochi.  That's true

17  for defendants as well.

18          THE COURT:  Okay.  So what I'd like to do is start

19  with one at a time, hear from the plaintiffs, they're the

20  moving party, we'll exhaust the argument, and then we'll move

21  on to the next argument.  What I'd like to do is, I'd like to

22  save what I think is the most complex issue, as far as the

23  Court is concerned, is the obviousness issue.  I'd like to

24  save that for last, and start with the Section 112 invalidity

25  argument.

1        I want to start with what I perceive as more the

2    straightforward issue and then get to the more complicated

3    issue.

4        So if you'll indulge the Court.  Ms. James, if you're

5    going to argue, let's start with the Section 112 invalidity

6    argument.  Tell me why the Court -- it appears to the Court --

7    are you seeking to strike Paragraphs 95 to 142, the entirety

8    of it?

9        MS. JAMES:  Yes, Your Honor.  In -- when we look at

10    the 112 bucket, there's three different subsections that are

11    associated with Section 112, written description, enablement

12    and indefiniteness, and if it's okay with Your Honor, I will

13    take each of those in turn.

14        THE COURT:  Perfect.  No problem.

15        MS. JAMES:  Because we understand, Your Honor, this

16    is complicated.  It was complicated for us, as well, to sort

17    of piece this all together and figure it out.  So I've

18    endeavored to try to simplify this as much as possible for the

19    Court for our discussions today.

20        THE COURT:  Well, that would be helpful since you do

21    this for a living, I don't.

22        MS. JAMES:  So we'll start out really simple and I'll

23    lay the foundation and we could expand the discussion as we

24    continue our conversation.  But the basic premise, Your Honor,

25    is that when we looked at the defendants' contentions that

1    were served in 2018, we believe that we had the right to rely

2    on the arguments that were disclosed in those contentions.

3    And we proceeded throughout this entire case, all through fact

4    discoveries, the *Markman* hearing, and to the beginning of

5    expert discovery relying on those contentions.

6              It was surprising to us when we received

7    Dr. Cockcroft's expert report to learn that there were new

8    arguments that were never disclosed in the joint contentions

9    or in the Sandoz contentions.  One of those arguments was

10   written description.  In the joint contentions, the defendants

11   did have an argument that Claim 1 of the '582 Patent did not

12   satisfy the written description requirement, but the

13   contentions were silent with respect to Claims 3 and 4 of the

14   '582 Patent and any alleged deficiencies for written

15   description.

16             The claim that plaintiffs are asserting now in the

17   case are Claims 3 and 4.  Claim 1 is no longer being asserted

18   and is, therefore, no longer relevant.  And because the joint

19   contentions do not contain any disclosures or advance warning

20   of a written description argument for Claims 3 and 4 of the

21   '582 Patent, we believe those sections should be removed from

22   Dr. Cockcroft's expert report.

23             THE COURT:  Okay.  So I appreciate that and I think

24   it's very helpful to break up the argument into the three

25   sections -- Section 112 argument into the three subsections.

1  Why don't we -- if you're done with your argument as to the

2  written description issue, why don't we hear what the

3  defendant has to say on written description, then we'll go to

4  enablement and indefiniteness.  But I don't want to cut you

5  off if you have something else to say on written description,

6  let's hear it.

7           MS. JAMES:  No, Your Honor.  I would like to reserve

8  my right to reply --

9           THE COURT:  Of course.

10           MS. JAMES:  -- to the defendants' argument.  But that

11  is basically, simply put, the basic essence of our argument

12  and I don't need to expound more and waste the Court's time.

13           THE COURT:  So let's hear from the defendant.  And

14  what would be very, very, very helpful for the Court,

15  Defendant, is plaintiff is saying black and white, couldn't be

16  clearer.  Claim 3 and 4 are not mentioned in the joint

17  contention, not disclosed.

18           Can you point me to where I could look at to find the

19  disclosure?

20           MS. MAZZOCHI:  Thank you, Your Honor.  I would start

21  with our -- with the defendants' joint contentions at Page 46,

22  and one thing that I would like to give as background, Your

23  Honor, is that Claim 1 of the -- of the asserted claims in the

24  '582 Patent, for example, that claim -- the term in the claim

25  that the parties are really disputing is the language, a

1    crystalline form and as it applies to hemihydrate.

2            That hemihydrate term, likewise -- you know, likewise

3    is incorporated into Claims 3 and 4, because Claims 3 and 4

4    are dependent on Claim 1.  So that's why all of the arguments

5    pertaining to Claim 1 equally transfer over to Claims 3 and 4.

6            And, in fact, if you look at Page 46 of our

7    contention, when we started the analysis of Section 112

8    invalidity, you know, we noted that this was based on certain,

9    you know, contentions raised by the plaintiff.  We do say the

10   defendants' belief is that the asserted claims, and that

11   includes Claims 1, Claim 3, Claim 4, the plaintiffs were

12   asserting other claims at that time, that the invalid for

13   indefiniteness for failure to set aside a written description

14   requirement and enablement requirements of Section 112 of the

15   Patent Act.

16           So I disagree that we never put plaintiffs on notice

17   that we believed all of these defenses applied to all of the

18   claims that they were asserting.

19           THE COURT:  So it sounds to me like you're not

20   disputing that Claims 3 and 4 were not specifically mentioned,

21   but it should have been inferred from the language that you

22   used that it was included.  Is that what you're saying?

23           MS. MAZZOCHI:  No.  I was saying that the whole

24   theory under Claim 1 and we start that explanation off on

25   Page 47 of the contentions.  When we explain that Claim 1

1    lacks sufficient written description, our rationale for why

2    this is so, is because the specification does not indicate the

3    other -- all of the crystalline forms of canagliflozin

4    hemihydrate that the plaintiffs had contended could fall

5    within the scope of their claims and that the specification

6    doesn't give a description beyond one particular type.  And we

7    specifically note why the x-ray analysis, which is one of the

8    things that's incorporated into the dependent claim as well

9    doesn't support the full written description scope.

10          So I would not agree that we didn't -- that all of

11   the defendants did not take that position.  And then I don't

12   know if Sandoz also wishes to jump in, but Sandoz's invalidity

13   contentions, likewise, you know, applied their analysis to all

14   of the claims.

15          So, for example, in the Sandoz supplemental

16   contentions, I believe this is at Page 35, they specifically

17   said Claims 1 and 3 through 5 of the '202 Patent are invalid

18   for lack of written description.

19          You know, so I don't think that there was ever any

20   intent to limit the scope of the written description analyses

21   to just Claim 1, whether we're talking about the '582 Patent

22   or the '202 Patent.

23          THE COURT:  Am I correct, Ms. Mazzochi, that your

24   firm didn't prepare these contentions, that was your

25   predecessor firm?

1          MS. MAZZOCHI:  That's correct, Your Honor.

2          THE COURT:  Okay.  And correct me if I'm wrong, but

3     as far as I could see, Sandoz's contentions are not at issue

4     in this dispute.  Plaintiff is not seeking to strike any of

5     Sandoz's contentions.  We're just dealing with these two

6     expert reports, right?

7          MS. MAZZOCHI:  Correct.  But the expert reports, Your

8     Honor -- again, this is Ms. Mazzochi.  The expert reports are

9     being submitted on behalf of all of the defendants.  So Sandoz

10    didn't -- on the invalidity issues, the defendant submitted

11    just one expert report from Dr. Cockcroft on all of the 112

12    issues.  And likewise, the defendants jointly issued one

13    single expert report from Dr. Eckhardt, with the expectation

14    that the Court would not tolerate hearing from multiple

15    experts on behalf of multiple defendants on the same issue at

16    trial.

17         THE COURT:  And maybe this gets into Mr. Baton's

18    argument.  Do you believe that even though you -- not you, the

19    contentions does not specifically mention 3 and 4, that that

20    complies with the language in the local patent rules?

21         MS. MAZZOCHI:  We think it does, Your Honor, because

22    the issue that is in dispute centers around Claim 1.  Claim 1

23    is incorporated by reference in the '582 Patent into Claims 3

24    and 4.  At the time we prepared the contentions, the plaintiff

25    certainly had not surrendered Claim 1.  They actually only

1    surrendered Claim 1, you know, within the last few weeks.  So,

2    you know, I don't think that was even on our radar screen.

3         And when I read the local rules, it just asks you --

4    under 3.3(b), it just says to raise grounds of invalidity

5    based on 101, 112(b) or enablement or written description,

6    including, you know, any of the asserted claims including a

7    detailed explanation of the basis for the asserted grounds.

8         Well, the grounds that Dr. Cockcroft has articulated,

9    whether you apply them to Claim 1, to Claim 3, to Claim 4,

10   it's the same rationale, and it's the same rationale that was

11   already disclosed in the contentions.

12        THE COURT:  Okay.  But there's no legitimate dispute

13   that it would have been crystal clear -- I'm looking at

14   Page 46, if instead of saying Claim 1 of the '582 Patent, it

15   would have said Claim 1, 3, and 4 of the '582 Patent.  That's

16   not in dispute, is it?

17        MS. MAZZOCHI:  But when you look at how -- sorry,

18   Your Honor, this is Ms. Mazzochi.  But when you look at the

19   very beginning, when we defined what we meant by the phrase

20   Asserted Claims, capital A Asserted, capital C Claims, and

21   this is on Page 2, we specifically stated that the Asserted

22   Claims encompassed Claims 1, 3 to 4, and 6 to 7 of the '582

23   Patent, and Claims 1 and 3 to 5 of the '202 Patent.

24        THE COURT:  Okay.  Let's hear from the reply of

25   plaintiff and then we'll move on to the enablement.

1        MS. JAMES:  Thank you, Your Honor.  Again, this is

2   Colleen James.  And I think that what we just heard is

3   precisely -- it precisely shows the problem.

4        We, as plaintiffs reading the contentions, took the

5   headings that we see starting on Page 46 at face value.  The

6   headings don't say the Asserted Claims, the headings say

7   Claim 1 of the '582 Patent is indefinite.

8        Then when we go further into the joint contentions,

9   starting on Page 52, there's another heading that says,

10  Invalidity of Claims 3 to 4 and 6 to 7 of the '582 Patent.

11       So it seems -- seemed to us when we were reading

12  this, that when the defendants wanted to specifically make an

13  argument for a specific claim, like 304, they broke that out

14  into a separate section.  There is no separate section for a

15  written description argument for Claims 3 and 4, unlike there

16  is for other types of arguments for Claim 3 and 4.

17       So it was reasonable, we believe, for us, to rely on

18  the contentions the way they were written, and not expect a

19  written description argument on Claims 3 and 4, because it's

20  just not in there, it's not included.  And for us to have to

21  put all these pieces together that the Asserted Claims really

22  means that Claims 3 and 4 apply to the written description

23  argument for Claim 1 when those claims are not even mentioned

24  in that section but in other sections Claims 3 and 4 are

25  particularly broken out, that seems like a lot of guessing

1    that we have to do and that, to us, we respectfully submit,

2    does not seem to fit within the spirit of the local rules.

3            THE COURT:  Okay.  Question for you.  I'm not ruling

4    now, I told you, I'm reserving decision.  Hypothetically, if

5    the Court agrees with the plaintiff, would it mean in your

6    judgment that the entirety of Paragraph 95 to 142 would be

7    stricken or are there particular paragraphs that only pertain

8    to written description?

9            Suppose the Court accepts the written description

10   argument but rejects the enablement and indefiniteness

11   argument.  What paragraphs are we talking about?

12           MS. JAMES:  Turning to the Cockcroft report, on

13   Page 32, Section A, is where the written description argument

14   begins for Claim 1, 3, and 4.  As he said, Claim 1 is no

15   longer being asserted, so that part of the report is no longer

16   relevant.  And then Claims 3 and 4 are in this section for

17   written description and that would go through to Page 42,

18   Paragraph 114.

19           THE COURT:  Okay.

20           MS. MAZZOCHI:  Your Honor, this is Ms. Mazzochi

21   again.  Just one clarification, Your Honor.  I do note there

22   are Paragraphs 104 through 110 that seem to be more related to

23   enablement.

24           THE COURT:  Okay.  All right.  Let's move on to

25   enablement.

1          MS. MAZZOCHI:  Your Honor, this is Ms. Mazzochi.  If

2     I can raise two points.  I apologize, I just don't want to

3     lose this train of thought.

4          First, Your Honor, the fact that the plaintiffs are

5     choosing to not assert Claim 1 does not mean that

6     Dr. Cockcroft can't offer those opinions, because the

7     defendants had declaratory judgment counterclaims to

8     invalidate Claim 1 irrespective of what plaintiffs do or don't

9     do.  So the fact that plaintiffs may not wish to defend

10    Claim 1 doesn't mean that we don't have the ability to

11    invalidate it at trial.  So I just wanted to make that part

12    clear.

13         And then additionally, I did want to note for Your

14    Honor that while plaintiffs' counsel indicated that they had

15    no clue that anything that was going to be discussed for Claim

16    -- for the other claim, such as Claim 3, we specifically say

17    in our contentions in the Claim 3 section at the top of

18    Page 54:  Defendants herein incorporate by reference

19    Section 2(b)(2), which sets forth the invalidity analysis for

20    crystalline forms of canagliflozin hemihydrate, Claim 1 of the

21    '582 Patent.

22         So in addition to the asserted claims, we also

23    reiterated that we were incorporating this by reference, and

24    this is not unusual when we have a scenario of independent

25    claims followed by dependent claims, is that we've already

```
 1  done the analysis for the independent claim, it applies to the

 2  dependent claims and then usually we spend more time on the

 3  dependent claims focusing on the language that is new as

 4  opposed to repeating what was already done.

 5          THE COURT:  Okay.  Time to move on to enablement.

 6  Ms. James, let's hear from you, and are we only talking about

 7  Paragraphs 104 to 110?

 8          MS. JAMES:  Let me double-check that, Your Honor.

 9          That's correct, Your Honor.

10          THE COURT:  Okay.  Let's hear your argument.

11          MS. JAMES:  Your Honor, in the joint contentions, the

12  defendants had made an enablement argument.  They made the

13  argument in the joint contentions that following the

14  instructions in the patents-in-suit in the specifications, a

15  person of ordinary skill in the art could not make all of the

16  forms of canagliflozin hemihydrate that were claimed.

17          When we received Dr. Cockcroft's report, however,

18  there was a new enablement argument, a different one.  It

19  seemed that the defendants abandoned the argument they had in

20  their contentions and replaced it with an argument that if you

21  practice the process of Example 1, that it teaches you to make

22  canagliflozin hemihydrate, you wouldn't get any form of

23  canagliflozin hemihydrate.  So that's a different argument.

24  It's nuanced but it's different.  They went from arguing the

25  patent doesn't enable one of ordinary skill in the art to make
```

1    all forms of canagliflozin hemihydrate, to the patent doesn't

2    enable a person of ordinary skill in the art to make any

3    canagliflozin hemihydrate.

4           We were surprised to see that in Dr. Cockcroft's

5    expert report and not only did they make this new argument,

6    they -- they had an expert who conducted testing to reproduce

7    Example 1 and relied -- and Dr. Cockcroft relies on that

8    expert testing to argue that the patent is not enabled to make

9    any canagliflozin hemihydrate.

10          So this is a perfect example of why the rules require

11   defendants to put forth their invalidity contentions as early

12   as possible.

13          When we received Dr. Cockcroft's report, we only had

14   four weeks.  If we would have known a year before or in 2018

15   or somewhere along the way that defendants were going to argue

16   this, we would have had the opportunity to do our own testing,

17   for example, or approach the case in a different way.

18          But this argument, which is totally new, is something

19   that we had to respond to within four weeks and couldn't

20   respond to in perhaps the way we might have decided to if we

21   had known about it earlier.

22          But this new argument is nowhere disclosed in the

23   joint contentions or in Sandoz's contentions.

24          THE COURT:  Can you just go back and highlight the

25   nuance that you're talking about again?  I want to make sure I

1  catch it.

2          MS. JAMES:  Of course, Your Honor.

3          Claim 1 of the '582 Patent claims crystalline forms

4  of canagliflozin, in particular the hemihydrate crystalline

5  form of canagliflozin.  Initially, defendants were arguing

6  that if that claim covers more than one form of the

7  hemihydrate crystalline material of canagliflozin, the patent

8  didn't allow you to make all the forms that could be covered.

9          Does that make sense so far, Your Honor?

10         THE COURT:  Yes.

11         MS. JAMES:  They didn't make that argument in

12  Dr. Cockcroft's report.  Instead, they argued that if a

13  scientist took the recipe of Example 1 to make canagliflozin

14  hemihydrate, it wouldn't work at all, you wouldn't even make a

15  compound, which was very surprising to us, because -- so as

16  far as we're concerned, if you follow the instructions in the

17  patent, you will make canagliflozin hemihydrate, the patent is

18  enabled to make that.

19         Does that --

20         THE COURT:  I got it.

21         MS. JAMES:  Thank you, Your Honor.

22         THE COURT:  I got it.  Okay.  Let's hear from

23  defendant.

24         MS. MAZZOCHI:  Thank you, Your Honor.  This is

25  Ms. Mazzochi again.

1        When it comes to enablement, the plaintiffs only

2   included two patent examples:  Example 1 and Example 2.  The

3   argument that they had been making as to why their patent

4   should survive, but the prior art patent that also talked

5   about canagliflozin and hydrates and solvates should die, is

6   because they had a recipe that lets you make the hemihydrate

7   and the prior art did not.

8        What we then did, because the Wands factors, the

9   enablement factors, one of the factors is the predictability

10  or unpredictability of the art and one of the other factors is

11  the presence or absence of working examples.

12       We knew, and the plaintiff did not dispute, and, you

13  know, we issued discovery requests on this, tell us how the

14  seeds were made and the plaintiff admitted they don't know how

15  the seeds in Example 2 were made.  So Example 2 on its face is

16  a failure because we don't know how these seeds are made and

17  that's set forth in our contentions.

18       During discovery, and this is also part of our motion

19  to compel that we were last in front of Your Honor before, one

20  of the things that we were looking at were for the plaintiffs'

21  data on some of these prior art samples.  Your Honor ordered

22  that they produce them.  The plaintiff still had not produced

23  them, notwithstanding the January 15th deadline because now

24  they've made a new assertion of privilege.

25       We took the -- we, then, because we don't have this

1  data from plaintiffs and they refuse to turn it over, we also

2  evaluated does Example 1 work, because there were holes in

3  their laboratory notebooks and they didn't have the data.

4          As it turns out, when someone tried to follow their

5  patent example, it didn't work either.  So that was the

6  evidence that we gathered regarding do these examples work or

7  not.

8          That's not a new contention.  We've always contended

9  there was not enough detail, including experimental detail in

10  the specification to let the person of ordinary skill in the

11  art make any of the hemihydrates that are covered.

12          So all Dr. Cockcroft is doing is taking this evidence

13  as he's perfectly entitled to do, to show, here's the evidence

14  of why our contention of non-enablement is correct, and for

15  the plaintiffs to say, poor us, we might have done something

16  differently, when we've been asking for that data and those

17  experiments and those experimental results since the beginning

18  of this case, Your Honor ordered them to produce it and they

19  still haven't produced it.  To me, it's a really hard pill to

20  swallow, Your Honor, for them to say that somehow we're doing

21  something improper here.

22          THE COURT:  Well, let me ask you a question here.

23          As I understand plaintiffs' argument, they're saying

24  the original enablement argument in the contention was that

25  you can't make all of it.  Now the argument is you can't make

1    any of it.  Is that right?

2         MS. MAZZOCHI:  Well, I don't view them to be as

3    distinct as the plaintiffs would argue.  Our position all

4    along has been whatever you think your claims cover, you

5    haven't enabled the full scope.  The fact that their own

6    patent examples don't even work is perfect evidence of why

7    they haven't enabled the full scope.  And even moreover, they

8    haven't even enabled the one that they promise you in the

9    specification they were able to make.

10         But that's not a new argument, whether you can or

11   can't make one or whether you can or can't make any of them,

12   it doesn't show the enablement argument, which is that the

13   full scope of your claims can't be made by a person of

14   ordinary skill in the art without undue experimentation.  And

15   because of the opinions that their other experts in this case

16   have taken and the positions that they took in their

17   contentions, that if you don't have a perfectly working

18   recipe, then the art is too unpredictable for you to ever make

19   these, even if you're a person of ordinary skill in the art.

20   That's what the enablement argument was all about.

21         THE COURT:  Okay.  Question for you.

22         MS. MAZZOCHI:  Sure.

23         THE COURT:  If the original language or argument in

24   the contentions says, in my words, you can't make all of it

25   instead of you can't make any of it, and Dr. Cockcroft

```
 1    testifies to that, does that invalidate the patent?
 2              MS. MAZZOCHI:  Yes.
 3              THE COURT:  Okay, I got you.  Okay.  Anything else?
 4              MS. JAMES:  Your Honor, this is Ms. James, if I may
 5    reply.
 6              THE COURT:  Sure.
 7              MS. JAMES:  Thank you, Your Honor.  A lot was just
 8    said and I'm going to try to unpackage it bit by bit.
 9              First of all, the accusations about the documents we
10    were ordered to produce --
11              THE COURT:  I'm not -- let me cut you short, because
12    I don't want to --
13              MS. JAMES:  Go ahead, please, Your Honor.
14              THE COURT:  That argument that the defendant -- or
15    the plaintiff didn't produce discovery, in my view, has no
16    merit.  This Court has been available since whenever we
17    started this case to respond to any discovery dispute.  If the
18    plaintiff had -- the defendant had a problem with discovery,
19    they should have raised it.  Too late to raise it.  I'm not
20    going to entertain any discovery dispute in the context of
21    this expert's position, so there's no need to address the
22    argument that their actions are skewed because you didn't
23    produce discovery.
24              In my view, that argument has no merit and will not
25    be given any weight.  So let's just get to the important
```

1    issues.

2         MS. JAMES:  Yes, Your Honor, thank you.

3         As I understand the local rules, a party needs to

4    explain in detail what their invalidity contentions are.  So,

5    for example, if the defendants, as Ms. Mazzochi said, they

6    told us they were going to argue that Example 2 because it

7    requires the use of a seed was not going to enable one of

8    ordinary skill in the art to make all of the potential forms

9    of hemihydrate that could be claimed by Claim 1, that's

10   different, because they never said in their contentions and I

11   have not seen a defendant point to a section in their joint

12   contentions where they say, Example 1, if you follow the

13   instructions for Example 1, you will not make any form of

14   canagliflozin hemihydrate.  And I do think that although it's

15   nuanced, they are two totally different arguments to say I

16   can't -- you can't make all of them, which I think we could

17   reasonably assume, means they were not going to assert -- you

18   can't make any, because I know when I read Dr. Cockcroft's

19   report, I was very surprised to see this argument as well as

20   the testing that he relies on to say, A, allegedly the example

21   does not allow one of ordinary skill in the art to make any

22   canagliflozin hemihydrate.

23        THE COURT:  All right.  Let me ask you this question.

24        If Dr. Cockcroft has addressed the issue that you

25   can't make all of it, I take it you wouldn't -- you might

 1   object to the substance of it, but you wouldn't object that

 2   it's a late disclosed contention.  Is that right?

 3            MS. JAMES:  Yes, Your Honor, because that would have

 4   been disclosed -- our enablement argument that was disclosed

 5   -- and we want to be reasonable here.  If it was disclosed in

 6   the joint contentions, then we would not be making an

 7   application for that, to strike that argument.  But that's not

 8   the argument Dr. Cockcroft is making now.

 9            THE COURT:  Okay.  Anything else?

10            MS. JAMES:  No, Your Honor.  Thank you.

11            THE COURT:  Okay.  Hold on one moment.  Let me just

12   make a note.

13            Okay.  Let's go -- and the last of -- and remember, I

14   said this was the most straightforward section of the three,

15   right?

16            MS. JAMES:  That's right.

17            THE COURT:  Let's go to indefiniteness.

18            Can you tell me what paragraphs are covered by this

19   argument?

20            MS. JAMES:  Your Honor, we're moving to the next

21   argument on indefiniteness under Section 112, is that correct?

22            THE COURT:  What paragraph is covered by that?

23            MS. JAMES:  I need to look back at the Cockcroft

24   report.  Excuse me.

25            THE COURT:  Because these three arguments, they don't

1   rise or fall together, right?  The Court can accept one and

2   not another, right?

3          MS. JAMES:  That is correct, Your Honor.  The

4   indefiniteness section in Dr. Cockcroft's report begins on

5   Page 47 and ends on Page 52.

6          THE COURT:  Okay.  Let's hear your argument.

7          MS. JAMES:  Your Honor, nowhere in the joint

8   contentions, and this is a theme that's repeated throughout

9   our argument and our application, there's nowhere in the joint

10  contentions that defendants claim that the term -- the word

11  "hemihydrate" is indefinite.  That word "hemihydrate" did

12  become the subject of claim construction and claim

13  construction briefing where plaintiffs put forth their

14  purported construction of that term.  That construction was

15  ultimately adopted by Judge Bumb in her claim construction

16  order.

17         Throughout the case, the defendants knew what the

18  plaintiffs were going to argue for the term "hemihydrate" and

19  what its meaning should be, which was then adopted by the

20  Court, and nowhere at any time during the course of those

21  activities in this case the defendants moved to amend their

22  contentions to add an argument that they believe the term

23  "hemihydrate" is indefinite.

24         Instead, in their brief, they argue that they're

25  waiting for the Court's *Markman* opinion and that's why they

1  did not move to amend their contentions.  But that should not

2  excuse their failure to amend their contentions and should not

3  now provide the basis for Dr. Cockcroft to add a completely

4  new indefiniteness argument to his expert report.

5          THE COURT:  Okay.  Let's hear from the defendants.

6          MS. MAZZOCHI:  Thank you, Your Honor.  The particular

7  -- if you read the particular paragraphs that the plaintiff is

8  complaining about in Dr. Cockcroft's expert report, all of the

9  evidence that's being cited is the '582 Patent, plaintiffs'

10 *Markman* briefing, and the opinion testimony of their expert

11 during the *Markman* proceedings, as well as questions by the

12 Court and plaintiffs' answers during the *Markman* proceedings.

13         So it was always the understanding that plaintiffs --

14 we didn't think that the plaintiffs should be allowed to get

15 their construction, and I think that when you look at our

16 contentions where we talk about indefiniteness, we again say

17 that to the extent they are suggesting that they should be

18 able to cover more than one crystalline form, which is what

19 this approximately argument is all about.  On page -- you

20 know, we start the argument on Page 46, but we again

21 specifically say the '582 Patent specification does not

22 explain whether the crystalline form of a canagliflozin

23 hemihydrate, the prosecution history, does not give any

24 clarity as to the metes and bounds of the alleged invention,

25 and again at the very end, we talk about how they obfuscated

1  the scope of the phrase "crystalline form," which is why Claim

2  1 fails to inform those skilled in the art which crystalline

3  form of canagliflozin hemihydrate followed in the scope of the

4  claims of any reasonable certainty.  That, that was the whole

5  point, that there's no reasonable certainty to this

6  hemihydrate term as the plaintiffs sought to construe it and

7  argued it during claim construction.

8       They were trying to say that a hemihydrate doesn't

9  have to have a particular ratio, it can have this approximate

10 ratio, which it would then allow them to encompass multiple

11 different crystalline forms, and that's all that Dr. Cockcroft

12 is noting.  And the evidence he's cited is plaintiffs' own

13 statements from the *Markman* proceedings, for the most part.

14      THE COURT:  Are you -- can you tell me what page, if

15 any, you're referring to in the joint contentions that this

16 indefinite argument is disclosed?

17      MS. MAZZOCHI:  Yes.  Pages 46 to 47.  And where we

18 are talking about the indefiniteness issue, because based on

19 this idea, the plaintiffs' contention that their Claim 1 could

20 encompass multiple polymorphic forms.  The whole dispute with

21 regard to the term "hemihydrate" -- well, not the only one,

22 one of the disputes at the *Markman* hearing regarding the claim

23 term "hemihydrate," is were their claims limited to one

24 specific form that was disclosed in their specification, or

25 allegedly disclosed in their specification, or, as plaintiffs

1    argued, did they get an opportunity to cover multiple

2    crystalline forms, including crystalline forms that had

3    varying amounts of water.

4         THE COURT:  Okay.  Can I ask you a question here,

5    Counsel, because I have Pages 46 to 47 in front of me.

6         MS. MAZZOCHI:  Yes.

7         THE COURT:  Second sentence says:  Specifically, to

8    the extent plaintiffs contend the phrase, quote, crystalline

9    form, close quote, covers all blah, blah, blah, blah, and it

10   goes on to say it is indefinite, okay?

11        MS. MAZZOCHI:  Correct.

12        THE COURT:  There's no dispute about that disclosure.

13   Where is a similar disclosure for hemihydrate?

14        MS. MAZZOCHI:  Well, because the crystalline form,

15   that term applies to the hemihydrate.  And what would be

16   argued at the *Markman* hearing is we said that the claims

17   should be limited to only one particular crystalline form of

18   the hemihydrate, one that had a certain amount of water, a

19   certain PGA result, et cetera.

20        The plaintiffs in turn argued that they had a right

21   to cover a whole range of crystalline forms of the hemihydrate

22   and they argued that by putting the term "approximate" into

23   their claim construction was one of the things that allowed

24   them to cover these multiple crystalline forms.

25        THE COURT:  Okay.  But you know when we turn the

1   floor over to the plaintiff, you know what they're going to

2   say.  They're going to say, you know, you were clear with

3   regard to the term "crystalline form."

4       If that was your intent to assert the indefiniteness

5   argument as to hemihydrate, why weren't you just as clear

6   instead of going through all these gymnastics?

7       MS. MAZZOCHI:  Your Honor -- this is Ms. Mazzochi.

8   Again, I don't view this as gymnastics.  This is the whole

9   point of being a crystalline form of hemihydrate, and the way

10  in which the Court construed them, it was a crystalline form

11  of canagliflozin comprising approximately half a mL of water

12  to one mL of the compound.  That was the construction claim as

13  argued for.

14      The whole rationale they gave for why they wanted to

15  get that construction was that they could cover a range of

16  different crystalline forms.  And that's exactly what

17  Dr. Cockcroft then points out when you are -- when he is

18  referring to, you know, what is going to be this approximate

19  range of crystal forms.  Is it going to, you know, have this

20  amount of water or that amount of water, and, you know, if

21  he's even responding to plaintiffs' invalidity contentions.

22      And then I'm looking for the statement of Dr. Jones.

23  Dr. Jones -- and this is in Dr. Cockcroft's Paragraph 128.  So

24  their own expert during *Markman* said that this difference in

25  the water ratio is like -- allows them to cover these

1   different crystalline forms which are going to then manifest

2   themselves in differences in the analytical techniques and,

3   you know, this is why he thinks they're going to get these

4   different environmental conditions and what he referred to as

5   crystal defects and a whole host of issues.

6           So to me, the plaintiffs in trying to say, oh, let us

7   divorce crystalline form from hemihydrate, that is completely

8   the opposite of what they did during the *Markman* proceedings.

9   Where they were -- where they actually said that that term, "a

10  crystalline form" allows them the leeway to cover a range of

11  different hemihydrates.

12          THE COURT:  Is it your position, Counsel, that this

13  particular indefinite argument only accrued after the *Markman*

14  construction?

15          MS. MAZZOCHI:  Yes.

16          THE COURT:  So if that's the case, why didn't you

17  move to amend your contention?

18          MS. MAZZOCHI:  Because from our perspective, it's --

19  I mean, the issue has already been raised and we put in our

20  contentions, to the extent plaintiffs contend the phrase

21  "crystalline form" covers crystalline forms of hemihydrate

22  beyond those disclosed in the specification.  That's what they

23  contended at the *Markman* hearing, and we already said in our

24  contentions the term is indefinite.

25          THE COURT:  Okay.  Anything else?  Okay.  Let's hear

 1   from plaintiffs' reply and then we will move on.

 2           MS. JAMES:  Thank you, Your Honor.  Again, for the

 3   record, this is Colleen James.  Again, we -- you know, we've

 4   heard defendants' counsel cite to the *Markman* transcript from

 5   the hearing, citing to a deposition transcript from

 6   plaintiffs' expert in support of their *Markman* positions, but

 7   we have yet to find where in the joint contentions

 8   Dr. Cockcroft's indefinite arguments are.

 9           And Dr. Cockcroft makes specific indefinites

10   arguments when it comes to hemihydrate.  He's taking issue

11   with plaintiffs' proposed construction and the construction

12   the Court adopted that includes the term "approximately."

13   Approximately half a mL of water to one mL of compound and

14   Dr. Cockcroft is taking issue with the term "approximately" as

15   it's used to define hemihydrate.  That idea, that concept is

16   nowhere in the joint contentions.

17           Again, Dr. Cockcroft is taking issue with the term

18   "substantially" in Claim 3 and 4 of the patent, as indefinite.

19   Again, when I look at the joint contentions, I don't see any

20   discussion of the term "substantially" in Claims 3 and 4 of

21   the '582 Patent as being indefinite.

22           We know under the local rules, a *Markman* order or

23   decision is potentially grounds to amend their contentions,

24   and thought that if plaintiffs -- excuse me -- the defendants

25   were going to have these invalidity indefinites arguments,

1    they would amend their contentions as they are required to do

2    to include these arguments.  That time came and went and they

3    didn't, and to our surprise, we now see these arguments in

4    Dr. Cockcroft's report, which we believe is a violation of the

5    local patent rules.

6           THE COURT:  Okay.

7           MS. MAZZOCHI:  Your Honor, this is Ms. Mazzochi.

8    Because the plaintiffs just raised the "substantially" issue.

9    We have explicitly, Page 58 of the contentions, defendants

10   also assert that Claim 3 of the '582 Patent is invalid because

11   the phrase "substantially the same" is indefinite.

12          So we clearly also put that as well into our

13   contentions.  So I don't -- you know, that got slid in there

14   and I don't think there's been any dispute that we didn't

15   disclose that particular issue.

16          I think that where we seem to have an impact with

17   plaintiff is that the plaintiff seems to think we should have

18   put all of our evidence into our contentions and the fact that

19   we developed evidence to support our contentions later on,

20   which Dr. Cockcroft is now relying on, I don't view that as a

21   new theory.  We have new evidence, we don't necessarily have a

22   new theory.

23          What Dr. Cockcroft is pointing out is that the

24   plaintiffs "approximately" word, term, from the claim

25   construction as applied to hemihydrate is what is allowing the

1    claims to cover multiple hydrate forms, which is exactly what

2    we complained about in our original contentions.

3          And I don't read the New Jersey local patent rules as

4    saying we have a duty for our contentions, certainly not on

5    112, to recite every piece of evidence that we plan to rely

6    on.  And if that's the pathway we're going to go down, then we

7    will be back in front of Your Honor, because the bulk of the

8    evidence that the plaintiffs are relying on, likewise, was not

9    disclosed in many of their contentions.  Maybe their theory

10   was, but not the evidence.

11         And I think that's the problem here, is that the

12   plaintiffs are suggesting that because we -- Dr. Cockcroft is

13   reciting evidence of the theory, that that means they went on

14   notice of the theory, and I just -- I can't agree to that.

15         THE COURT:  Okay.  Let's move on to anticipation.

16         Plaintiff?

17         MS. JAMES:  Thank you, Your Honor -- sorry.

18         THE COURT:  Are we going to divide this up like we

19   did with Section 112?

20         MS. JAMES:  No.  This is just one -- this argument

21   doesn't have subparts.

22         THE COURT:  Good.

23         (Laughter.)

24         MS. JAMES:  Yes, hopefully, this will go a little

25   faster, Your Honor, and I will do my best to make that happen.

1          We're now turning to Dr. Eckhardt's expert report,

2    and in Dr. Eckhardt's report, he describes an argument that's

3    titled an anticipation argument, and it appears to us that

4    he's arguing that the patent is allegedly invalid under an

5    anticipation theory based on a document referred to as the WO

6    '326 Patent Application, in light of other references that

7    talk about hydrates and Janssen internal documents.

8          In the joint contentions, there is no discussion of

9    an anticipation argument that relies on hydrate references and

10   Janssen internal documents.

11         The joint contentions do disclose an argument based

12   on WO '326 itself, but there's no other discussion about the

13   hydrate references in the Janssen internal document, and these

14   are documents that should have been identified in the joint

15   contentions if they are going to be the basis for any

16   invalidity argument.

17         The local rules require defendants to specifically

18   identify all individual references that they claim anticipate

19   the patents, even though the defendants admit the Janssen

20   internal document are not technically classic prior art.  For

21   the purposes of disclosure under the local patent rules,

22   documents like the Janssen documents that they're relying on

23   for their invalidity theory would need to be disclosed, and

24   they did not do that.

25         They seemed to again intimate in their letter that

1    these Janssen documents were amongst the documents that

2    plaintiffs produced late in December 2019.  The Janssen

3    documents that Dr. Eckhardt is now relying on were produced in

4    2018.  So there does not seem to us any reason why the

5    defendants could not have been -- were not aware of them at

6    that time and could not have cited them in their contentions

7    at that time.

8         Because they failed to do so, and amend their

9    contentions throughout this entire litigation, we do not

10   believe that Dr. Eckhardt should now be entitled to rewrite

11   the contentions and base an anticipation argument on these

12   hydrate references and Janssen internal documents.

13        THE COURT:  Okay.  Let's go to defendant.

14        MS. MAZZOCHI:  Thank you, Your Honor, again, this is

15   Ms. Mazzochi.  I think that a case that would be instructive

16   for Your Honor on this issue is *Monsanto Tech, LLC versus E.I.*

17   *DuPont de Nemours and Company,* 878, F.3d, 1336 at Page 1345,

18   Federal Circuit 2018.

19        And in that case, there was a dispute between the two

20   parties as to whether certain evidence, such as a declaration

21   and other things that were called extrinsic evidence, whether

22   that was prior art when you're talking about an anticipation

23   defense, and what the Federal Circuit said -- and I think that

24   the plaintiffs here are in the same position as *Monsanto*

25   there.  The Federal Circuit said, however, *Monsanto* confuses

1    prior art with extrinsic evidence used to support what is,

2    quote, necessarily present, close quote, in a prior art's

3    teaching.

4            So here again, there's no dispute that in our

5    contentions, at Pages 24 to 25, we argued that the '326 Patent

6    discloses a hydrated polymorphic form of canagliflozin and we

7    specifically said, this is on Page 25, the Vero '326 also

8    inherently describes every limitation of Claim 1 of the '582

9    Patent.

10           So similarly, what we are using these other

11   references for and what we are using the Janssen documents

12   for, is to show what was inherently within the WO '326

13   reference.  They're not, themselves, stand-alone independent

14   prior art.

15           So, for example, in our -- on Page 25, we say WO '326

16   teaches that well-known and conventional methods may be used

17   for the isolation and purification of canagliflozin.  These

18   well-known methods in the art include recrystallization and

19   they gave the citations to that.

20           Now, the plaintiffs in their contentions have come

21   back to say, well, we don't think that's enough to, for

22   example, give you a recipe of that -- you know, the person of

23   ordinary skill in the art couldn't use that to make

24   hemihydrate.  What Dr. Eckhardt has done is identified

25   evidence, not a new theory, it's evidence showing that these

1   existed teachings in the '326 Patent, you know, allowed the

2   hemihydrate or enabled the form of the hemihydrate to be

3   necessarily present in this prior art teaching.

4        So this again is, I think, where we're getting into

5   this distinction between the local rules don't require us to

6   submit every piece of evidence, we have to identify the

7   contention.  And these particular pieces of evidence that

8   Dr. Eckhardt is relying on, including that Janssen itself was

9   able to make some hemihydrate without any difficulty following

10  synthetic steps set forth in the '326 Patent, you know, shows

11  that this was an inherent disclosure within the '326 Patent,

12  and I think that the *Monsanto* case kind of gives the framework

13  for how to think about it.

14       Another one that the *Monsanto* case cites, *In Re*

15  *Baxter Travenol Labs,* 952 F.2d 388 at 390, Fed Circuit 1991.

16  In that case, there was a question about whether a particular

17  plastic in this prior art material has certain leachable

18  qualities.

19       The patent challengers were allowed to go outside the

20  reference to say, this is what we know is inside the reference

21  and that was okay.  It's not prior art when you go outside the

22  reference.

23       So we're not trying to say that the Janssen documents

24  that are being relied on for this purpose are themselves an

25  independent prior art citation.  We're just saying that it's

1  evidence that confirms our contention about inherency is

2  correct, and the plaintiffs' contention about inherency is

3  wrong.

4          THE COURT:  Got it.  Thank you.

5          Plaintiff, last word.

6          MS. JAMES:  Thank you, Your Honor.  This is Colleen

7  James.  We can debate at another time the law of inherent

8  anticipation and the fact that technically under the law, you

9  only can rely on a single document to prove anticipation, and

10  here, as I heard Ms. Mazzochi say, she called the Janssen

11  documents extrinsic evidence and I believe and understand that

12  the local rules, whether you call it prior art or extrinsic

13  evidence or something else, however you want to label it, if

14  it's something you believe is evidence to your argument and

15  you are aware of it, because we produced it to you in this

16  case, you need to cite it in your invalidity contentions if

17  you would like to rely on it during expert discovery.

18          Defendants did not do that and they had every

19  opportunity to do that throughout this litigation and now

20  should not be able to sneak in all of these references that

21  were known in 2008 during expert discovery -- 2018.

22          THE COURT:  Okay.  Thank you.  All right.  Last is

23  the obviousness issue and as I understand the argument from

24  reading the papers, there's four subsections to this.  Is that

25  right, Plaintiff?

1          MS. JAMES:  I put them in three buckets, Your Honor,

2     which maybe makes it a little easier to have one less bucket

3     for Your Honor to deal with today.

4          THE COURT:  Well, the less the better, that's for

5     sure.  I mean, the new combination, the new references, and

6     the new theories.  Is that the three buckets?

7          MS. JAMES:  I have bucket 1 -- if you'll indulge me

8     for a minute, Your Honor, so make sure we all get on the same

9     page to have the right framework going forward.

10          Bucket 1, I grouped together, never disclose

11     references and combinations.

12          THE COURT:  Right.

13          MS. JAMES:  Bucket 2 is previously disclosed

14     references, but they're being cited for a different purpose.

15          And bucket 3, the addition of a knowledge to a POSA

16     to the combinations.

17          THE COURT:  Okay.

18          MS. JAMES:  I'm happy to do it any way Your Honor

19     prefers.

20          THE COURT:  It's your application, so we'll do it

21     your way.

22          So, let's start -- let's do obviousness.  We know,

23     generally, we're talking about Paragraphs 299 to 365 of

24     Eckhardt.

25          Your first bucket is what?

 1          MS. JAMES:  The first bucket is references that were

 2    never disclosed in the joint contentions and combinations that

 3    were never disclosed in the joint contentions.

 4          THE COURT:  And can you -- excuse me.  Are you able

 5    to identify the paragraph of Eckhardt report saying if the

 6    Court agreed with you that what paragraphs would be stricken?

 7          MS. JAMES:  Yes, Your Honor, that is -- we endeavored

 8    to do that in our exhibits to try to be fair and went through

 9    the report to highlight the sections that should be stricken,

10    which in some cases isn't the entire paragraph on a page.

11          THE COURT:  It's just the highlighted portion?

12          MS. JAMES:  That's correct, Your Honor.

13          THE COURT:  Okay.  Can I go back a step?  There was a

14    question I meant to ask you earlier on, that I neglected to

15    ask.

16          Have all of plaintiffs' expert reports been produced?

17          MS. JAMES:  Yes, we have responded to the defendants'

18    reports.

19          THE COURT:  And have expert depositions been taken?

20          MS. JAMES:  No, Your Honor, the parties are still in

21    the expert -- the expert report phase.  The parties have yet

22    to exchange reply expert reports.

23          THE COURT:  All right.  In plaintiffs' expert

24    reports, either the reports that were already served or to be

25    served, do they address the issues that you're seeking to

1    strike?

2         MS. JAMES:  Unfortunately, Your Honor, given the

3    timing of defendants' invalidity expert reports and the fact

4    that we only had four weeks to respond and did not renew --

5    our application might not be decided by Your Honor before

6    then, we did take the safer approach and we did respond to all

7    of the defendants' invalidity expert opinions, even though we

8    believe that many of them are inappropriate.

9         THE COURT:  So again, hypothetical, I'm not ruling.

10   If the Court struck or granted all or part of plaintiffs'

11   application, would plaintiff remove those portions of the

12   expert submissions that respond to the portions of defendants'

13   reports that are stricken?

14        MS. JAMES:  Your Honor, yes, we could certainly do

15   that if that is the Court's preference.

16        THE COURT:  Well, you tell -- I mean, why would you

17   want to keep it in?

18        MS. JAMES:  We wouldn't need to, Your Honor.

19        THE COURT:  Okay.

20        MS. JAMES:  We only put it in in the first place to

21   respond within the time frame that we were allotted.  But if

22   Your Honor were to rule our way, we agree that those issues

23   can be removed from the case and the case can be streamlined

24   going forward.

25        THE COURT:  All right.  Let's go to obviousness.

1  Reference to Category 1 -- Subcategory 1:  References not

2  Disclosed in the Joint Contentions and the Combinations Not

3  Disclosed in the Joint Contentions.

4        MS. JAMES:  Okay.  So the local rule is very clear on

5  this, that the defendants need to not only identify each item

6  of prior art that allegedly renders each asserted claim

7  obvious, but they also have to explain why that prior art

8  renders the asserted claim obvious by pointing to specific

9  sections in the references, and the local rules are pretty

10 explicit on this.

11       Defendants' expert, Dr. Eckhardt, cites approximately

12 56 new references that were never identified in the joint

13 contentions.  The fact that many of these newly cited

14 references are Janssen internal documents does not, in our

15 view, excuse defendants from the requirement that they must be

16 disclosed.

17       Plaintiffs produced over a million pages of documents

18 in this litigation, and in their response to our application,

19 defendants try to shift the burden to us by suggesting that we

20 should be aware of the internal documents in our document

21 production that defendants are planning or were planning to

22 rely on in their expert reports.

23       That's not our job.  The defendants' job is to

24 identify the documents in our production they were planning on

25 relying on, and it would have been helpful for us to know that

 1   they were going to make these arguments and rely on these

 2   documents well early in the litigation, as they were required

 3   to do.  I think that it would have, you know, shaped our

 4   strategy, our questioning at depositions, and we were deprived

 5   of a lot of those opportunities because the defendants did not

 6   disclose these documents until February of this year.

 7           Defendants don't dispute that -- they don't dispute

 8   this, that the references were not disclosed.  They don't

 9   dispute the Janssen documents were not disclosed, and the

10   other references that were not disclosed in this group, they

11   -- the defendants' claim are just background information or

12   references to confirm the state of art.

13           THE COURT:  Hold on one second, Counsel.  Did someone

14   just call in for the 3:30 call?

15           MR. STINSON:  Yes, this is John Stinson from the

16   government, Your Honor.

17           THE COURT:  Okay.  Can I ask your indulgence,

18   Counsel?  We're going a little bit longer on the 2 o'clock

19   call that I thought we would.  Could you call in at 4?

20           MR. STINSON:  I'm happy to call in at 4, Your Honor.

21   If Mr. Molz is not hearing this right now, I'll shoot his

22   office an e-mail.

23           MR. MOLZ:  I'm here.

24           THE COURT:  Can you call in at 4, Mr. Molz?  We're

25   going a little bit longer.

1          MR. MOLZ:  Sure, absolutely.  Thank you, Your Honor.

2     Bye-bye.

3          THE COURT:  Counsel, just so you know, this is a

4     great conference call system that they set us up with.  The

5     only problem is, there's no firewall between the calls, so if

6     you go a little bit longer on a call than anticipated, the

7     next call comes right into your call.  So those two people who

8     called in have nothing to do with this case and that's why I

9     excused them.

10          MS. JAMES:  We understand.  Thank you, Your Honor.

11          THE COURT:  Let's continue.

12          MS. JAMES:  Thank you, Your Honor.  As I was saying,

13     the defendants do not dispute that the Janssen documents were

14     not disclosed in the invalidity contentions and they also

15     cannot dispute that other references were not disclosed in the

16     joint contentions.  Like, for example, the Etter reference was

17     not disclosed in the joint contentions, and the Etter

18     reference is now a reference that has appeared in defendants'

19     combinations of obviousness.  So not only did they also did

20     not disclose a reference, they also did not disclose a

21     combination using that reference, and in their opposition,

22     they said that we should have figured out that they were going

23     to use the Etter reference in a combination because the Etter

24     reference was cited in the Deseraju reference.

25          And again, you know, the position that the defendants

1    have repeatedly put us in in this case with respect to this

2    contention and the extra reports is that we would have to go

3    look through every reference and every citation in every

4    reference to piece together and figure out what their

5    combinations were going to be.  And the local rule

6    specifically make it clear that plaintiff should not have to

7    go through this detective work to try to figure out what

8    combinations are being asserted for obviousness.

9          The similar -- with the Jeffrey article was not cited

10   in the joint contentions and defendants now try to excuse this

11   fact by arguing that Jeffrey discloses similar concepts as

12   other references that were explicitly cited.  Again, without

13   specifically disclosing the Jeffrey or the Etter references,

14   defendant should not now be allowed to, A, rely on them, and

15   B, add them as part of -- as part of obviousness combinations

16   when those were not disclosed in the contentions.

17         And if it would help, Your Honor, in our reply

18   opposition brief starting on Page 6, we put together a chart,

19   and if Your Honor has that, it might be easier for me to walk

20   the Court through the chart.

21         THE COURT:  Let me pull it up.  Hold on one moment.

22         MS. JAMES:  Yes, Your Honor.

23         THE COURT:  That's the most recent brief, right?

24         MS. JAMES:  That's correct, on March 24th.

25         THE COURT:  I'm working from my iPad, so just bear

 1  with me.

 2          MS. JAMES:  Of course, Your Honor.

 3          THE COURT:  Okay.  While it's loading, you know -- I

 4  don't have it in front me, it's loading right now, but you can

 5  continue with your argument.

 6          MS. JAMES:  Okay.  You'll see, Your Honor, when you

 7  pull up the letter brief on Page 6, there's a chart, and the

 8  chart shows nine combinations that now appear in the Eckhardt

 9  report.

10          The defendants' joint contentions disclose only four

11  combinations and those are the combinations that plaintiffs

12  have been moving forward and relying on during this entire

13  case.

14          Now -- and we've set it forth in table -- in the

15  table on Page 6, the defendants are adding references to

16  combinations, such as -- would you like me to pause, Your

17  Honor?

18          THE COURT:  No, go ahead.

19          MS. JAMES:  Okay.  Such as, for example, in New

20  Combination 4, defendants add Hilfiker.  Hilfiker was

21  described in the joint contentions in a footnote and Hilfiker,

22  just to give the Court some perspective, is a 600-page

23  scientific book that actually is comprised of many different

24  sections written by different scientists and the defendant

25  cited two pages.

1          Now, in Dr. Eckhardt's expert report, Hilfiker is

2    part of a combination, not just in a footnote in the joint

3    contentions citing to two pages, it's a 600-page book that the

4    defendants are now using in one of their combinations and

5    they're citing to all other parts of Hilfiker.

6          There is no way that we could have anticipated that

7    they would have used Hilfiker in a combination when they

8    talked about in their joint contentions but didn't put it as

9    part of their contention, and nor were we able to foresee that

10   they would rely on other parts of this very voluminous

11   600-page-plus textbook for other arguments.

12         Again, then they add five brand new combinations that

13   were never disclosed in the joint contentions and those are

14   Combinations 5, 6, 7, and 9 -- excuse me, four combinations,

15   6, 7, and 9 that are brand new combinations never disclosed in

16   the joint contentions.

17         THE COURT:  What about -- I'm sorry, I'm looking at

18   it now, 5, 6, 7, 8, 9 says "combination not listed."

19         MS. JAMES:  Yes.  Those combinations, 5, 6, 7, and 9

20   were never disclosed in the joint contentions.  Those are

21   brand new --

22         THE COURT:  What about 7 and 8?

23         MS. JAMES:  So, 5, 6, 7, and 9 were never disclosed.

24   8 was disclosed, but in the Sandoz contentions.

25         THE COURT:  Oh, okay.

1          MS. JAMES:  Okay?  And that's another problem here,

2     Your Honor, is one of the things the defendants have kind of

3     forced us to do is not only look and try to figure out from

4     the joint contentions what combinations and what prior art

5     they're relying on.

6          THE COURT:  Why am I worried about the Sandoz

7     contentions?  Aren't we just talking about these defendants?

8     I mean, I'm assuming, correct me if I'm wrong, that even if it

9     was disclosed in the Sandoz contentions, if it's not in these

10     defendants' contentions, you're seeking to strike it.  Am I

11     wrong?

12          MS. JAMES:  No, you're correct, Your Honor.

13          THE COURT:  So why do I give a hoot whether it was

14     disclosed to Sandoz or not?

15          MS. JAMES:  We agree with Your Honor.

16          MR. REMUS:  Your Honor, this is Mark Remus on behalf

17     of Sandoz.  May I be heard?

18          THE COURT:  If it's relevant to this point.

19          MR. REMUS:  It absolutely is.  Sandoz is a party to

20     the Cockcroft and Eckhardt reports.  So, to the extent the

21     Court strikes any portions from those reports, it would be

22     prejudicial to Sandoz because Sandoz has disclosed these

23     contentions in its own contentions.  So that's why the Sandoz

24     contentions are relevant.

25          THE COURT:  Okay.  Hold on one second because -- bear

1    with me.  All I'm concerned about is these portions of the

2    expert -- of these two expert reports that were submitted

3    by -- somewhere I have a list of who submitted these expert

4    reports.

5             I'm not -- plaintiff hasn't moved to strike anything

6    of Sandoz.

7             MR. REMUS:  It has, though.  No, it has.  Because the

8    Eckhardt and Cockcroft reports were submitted on behalf of

9    Sandoz in addition to all of the other defendants.

10            THE COURT:  All right.  I don't think we -- I don't

11   think we have a disagreement.  Let me just see if I can state

12   it right.

13            Somewhere in these notes of mine, I have a list of

14   the defendants who submitted these joint contentions.  I take

15   it -- and the joint contentions we're talking about are

16   Exhibit 1, dated March 30th, 2018, correct?

17            MR. REMUS:  Correct.

18            THE COURT:  Okay.  So ultimately, the Court has to

19   rule as to whether those defendants who submitted this joint

20   contention on March 30th, 2018, can rely on the portions of

21   these two expert reports that we're dealing with.  That

22   doesn't involve Sandoz.

23            MR. REMUS:  It does, Your Honor, because --

24            THE COURT:  No, it doesn't.  Because the Court can

25   bar four or five defendants from relying on the paragraph, but

1  that doesn't mean Sandoz can't rely on it, right?

2          MR. REMUS:  If that's what Your Honor rules, yes.

3          THE COURT:  Okay.

4          MR. REMUS:  Our concern is to the extent they are

5  stricken entirely, we would certainly object to that.

6          THE COURT:  I gotcha.  But the Court -- the only

7  issue before the Court is whether these -- the defendants who

8  submitted the joint contentions on March 30, 2018, can rely on

9  those portions of the two expert reports.  That does not

10 involve Sandoz.  So we're -- okay, we're on the same page.

11         MR. REMUS:  I think we are.  But just to clarify,

12 Sandoz signed on to both the joint contentions as well as its

13 separate invalidity contentions.  So I just want to make sure

14 Your Honor appreciated that.

15         THE COURT:  To the extent it relied on the March 30,

16 '18 contentions, it rises or falls with the Court's ruling.

17 I'm not addressing Sandoz's separate March 30th, 2018

18 contentions, okay?

19         MR. REMUS:  I understand, Your Honor.  Thank you.

20         THE COURT:  Plaintiff, let's move on.

21         MS. JAMES:  Thank you, Your Honor.  Just to note on

22 this point, Dr. Eckhardt, in his materials considered, listed

23 the joint contentions, but he did not list the Sandoz

24 contentions.  So in our view, Dr. Eckhardt did not consider

25 those contentions when rendering his expert opinion.

```
 1              THE COURT:  That sounds like an evidentiary issue for

 2    trial.

 3              MS. JAMES:  Thank you, Your Honor.

 4              THE COURT:  I suspect you're going to file a motion

 5    in limine on that.

 6              MS. JAMES:  Your Honor, I'm happy to answer more

 7    questions.  I think our chart on Page 6 in our reply report

 8    sets forth this issue pretty clearly.  I'm happy to answer any

 9    of the Court's questions, but also happy to move on to the

10    next issue.

11              THE COURT:  I got it.  We have to wrap up by

12    4 o'clock, so let's see if we can move this along.

13              MS. JAMES:  Yes, Your Honor.  Would you like to hear

14    from the defendants or would you like me to move on to the

15    next bucket?

16              THE COURT:  No, no.  Let's hear from the defendants

17    on the first, what you call a bucket -- references not

18    disclosed in joint contentions and combinations not disclosed.

19              Defendant?

20              MS. MAZZOCHI:  Yes.  Thank you, Your Honor.  Again,

21    this is Ms. Mazzochi.  I think that we're -- we have a bit of

22    a disconnect between our understanding and plaintiffs' in

23    terms of how plaintiffs are interpreting the expert report, is

24    that -- of Dr. Eckhardt.  You know, when Dr. Eckhardt is

25    talking about various, you know, the materials he combined
```

1  together to reach a conclusion, he's pointing to everything --

2  not everything, but he's pointing to the salient points that

3  he relied on a reference for, and a lot of these references

4  are all kind of saying the same thing, you know, in different

5  ways.

6         But when you look at what the plaintiffs are really

7  objecting to, in the paragraph that they're pointing to, he's

8  not doing more combinations, more references.  Again, you

9  know, and we put in our brief where we think that the

10  plaintiffs are wrong, that these, in fact, were included in

11  our contentions and they were put in our claim charts,

12  including combination.  So we just -- we don't understand

13  where the plaintiffs are coming from, because when you look at

14  our contentions directly and our claim charts, a lot of these,

15  you know, these things that they're saying were not disclosed

16  were actually disclosed, including in combination.

17         The only exception I think to that one, would be

18  Combination No. 9 to the extent it references Jeffrey and

19  Etter because we did -- none of the defendants knew about

20  Jeffrey or Etter.  They referenced -- those are two references

21  that Dr. Eckhardt himself identified while he was preparing

22  his report, and to be perfectly honest, Your Honor, what he's

23  citing them for is to talk about a principle of hydrogen

24  bonding.  It's not -- they're not being disclosed to say, here

25  is the elements of hemihydrate, or here is the elements of

1    canagliflozin.

2           So here again, this is why we get to the point where

3    we think the plaintiffs are grossly misreading the local rules

4    and what's required in the invalidity contentions.

5           So in our invalidity contentions, we have offered the

6    theory, here is where canagliflozin is disclosed, here are the

7    various references that we think teach you how to make a

8    crystalline hydrate or how to make a crystalline polymorph

9    that in turn would be a hemihydrate.

10          Those are disclosed and they don't dispute that those

11   are disclosed.  What they're objecting to, and we can see this

12   when you start reading some of the sections that they've

13   highlighted from Dr. Eckhardt, what they're objecting to is

14   Dr. Eckhardt addressing the substance of their validity

15   contentions.

16          So, for example, if you look at Dr. Eckhardt's

17   Paragraph 308, he says plaintiffs argue one would have pursued

18   a chromatography method of purification and he cites to the

19   plaintiffs' contentions, but then he says, but this was done

20   using organics material which is one of the things that

21   plaintiffs are saying is a new reference.  It's not a new

22   reference, it's evidence.  It's their own documentary evidence

23   that contradicts their own contentions.

24          Now, they're saying they want Dr. Eckhardt to

25   withdraw in his opening report his response to their

1  contentions and then only offer his response to their

2  contentions in his reply report.

3       I guess we could do that, but he was trying to

4  address all of the issues that had been raised in his opening

5  report so that the plaintiffs to then respond which -- and

6  they've admitted, they've done, is they want to then say, oh,

7  no, we're now withdrawing our contention on this issue, and I

8  don't need Dr. Eckhardt to opine on it, and use this document

9  to prove that the plaintiffs were wrong, but the whole point

10 is they're not withdrawing their contention.

11      So that's why in response to their contention, he

12 said, this is why it's wrong.

13      Likewise, Paragraph 309, same -- you know, same

14 thing, he's responding to the plaintiffs' contention, when it

15 comes to the Hilfiker reference that the plaintiffs complained

16 about, that's in Paragraph 313, he -- all he's saying is,

17 well, it's referencing the same concept.

18      Well, that's not a new contention, it's not a new

19 reference, it's not a new theory, it's just pointing -- and

20 the Hilfiker reference was disclosed, it's not a new

21 combination, per se.  It's simply pointing out these same sets

22 of teachings which we've already identified in the contentions

23 appear in multiple references.

24      So, you know, for the plaintiff to say that we should

25 have somehow preassembled all of our evidence into the local

1    rule patent contentions, the local rule contentions are not

2    the final pretrial order.  They're not supposed to be expert

3    reports, and this is why we asked the plaintiffs to identify,

4    tell us where there's a local patent location, New Jersey,

5    that says, we are -- we have a duty to disclose every piece of

6    evidence, particularly every piece of evidence that we want to

7    -- including our own internal documents that we could use to

8    rebut your own contention.  That's not what the rule is.

9         When you look at what the rule is, did we identify

10   the prior art references we're relying on?  Yes.  Part B, did

11   we explain why in the contentions we think these references

12   are relevant?  Yes, because they are, they talk about certain

13   ways to make polymorphs and they talk about why you screen

14   polymorphs or whatever.

15        Then a chart identifying what in the prior art

16   references we're planning on using.  We did that, and that's

17   why we were able to cite for Your Honor in our responsive

18   letter on Pages 6 to 7, where, in our charts and in our

19   contentions, we disclosed all of these combinations -- I'm

20   sorry, that's on Pages 5 to 6.  6 to 7 was their new theory

21   but we also show where we had those as well.

22        So when it comes to the --

23        THE COURT:  Hold on, Counsel, we have to move this

24   along.  We have got ten minutes.

25        MS. MAZZOCHI:  Sure.

1          THE COURT:  We've been at this almost two hours.

2    Let's move this along, all right?

3          MS. MAZZOCHI:  That's fine, Your Honor.

4          THE COURT:  I heard enough on this point.

5          Plaintiff, what's the second bucket, real quick.

6          MS. JAMES:  Real quick, second bucket:  Previously

7    Disclosed Prior Art For a New Purpose.  The local rules

8    specifically call for not just an identification of the

9    reference, but also the specific section of the reference on

10   which defendants intend to rely.

11         In the joint contentions, defendants cited several

12   sections of certain references for their obviousness

13   arguments.  However, Dr. Eckhardt in his report cited to

14   entirely new sections of those references for support for his

15   opinions.  This is improper.

16         THE COURT:  Defendant?

17         MS. MAZZOCHI:  We disagree that, A, we've done what

18   the plaintiff accused us of doing, and B, as we understand the

19   local rules, an expert is not precluded from responding to the

20   plaintiffs' contentions by looking at other points of the

21   reference that contradict the plaintiffs' contentions about

22   that reference.

23         So here again, we have our contentions as to what we

24   think the evidence shows.  They want to come back and say, no,

25   we don't think it shows that, and then we respond, yes, it

1    does.  If they want to withdraw their contentions, we can

2    probably withdraw some of these.  But since we know they're

3    going to make them, Dr. Eckhardt shouldn't be precluded on the

4    scope of what he's allowed to rely on in rebuttal and --

5              THE COURT:  Okay, I got it.

6              Plaintiff, third point, third bucket.

7              MS. JAMES:  Third bucket:  Addition of Knowledge of

8    POSA to a Combination.

9              The language or the knowledge of a POSA as a catchall

10   was not in many of the combinations in the joint contentions,

11   but now Dr. Eckhardt is tacking that language on to his

12   combinations and it does not provide the disclosure of

13   specific references and specific sections of each reference

14   that allegedly renders the claims obvious.

15             So, in fact, you know, knowledge of a POSA language

16   to obviousness combination to choose the exact opposite

17   result, it leaves open the option for defendant to backdoor

18   any reference in, that -- that's within the knowledge of a

19   POSA, and that can be an infinite number of references.

20             As we pointed out in our chart, every time that the

21   defendants put knowledge of a POSA -- have added knowledge to

22   a POSA to their combinations, we think that is improper,

23   because in their contentions, they have to list out the

24   specific references and can't just say "knowledge of a POSA"

25   and leave the plaintiffs to try to figure out and decide

 1   amongst the infinite number of references within the knowledge

 2   of a POSA what the defendants could possibly be talking about

 3   that they would be relying on in their expert reports, and

 4   that's what happened and they ended up surprising and

 5   sandbagging us with other references that were never disclosed

 6   in Dr. Eckhardt's expert report.  Thank you, Your Honor.

 7          THE COURT:  Defendant?

 8          MS. MAZZOCHI:  Yes.  No. 1, the plaintiffs can't say,

 9   ignore the knowledge and scope of a person of ordinary skill

10   in the art.  That is part of the obviousness test.  The

11   Supreme Court has also said in the KSR decision that you can

12   rely on the knowledge and scope of a person of ordinary skill

13   in the art in an obviousness combination, because they

14   recognized not everything a person of ordinary skill in the

15   art knows is set forth in a little article or in a piece of

16   paper that was published.

17          To the extent we have a publication or a prior art

18   reference that we are relying on, again with the two that I

19   identified, Jeffrey and Etter, which Dr. Eckhardt

20   independently identified while he was preparing his reports,

21   all of the prior art references we have identified and plan to

22   rely on are in there.

23          To the extent that plaintiffs are raising some

24   issues, for example, like there's a Berenstein 2002 reference

25   that they complain Dr. Cockcroft is citing.  Well, they cited

1    that same reference in their own validity contentions.

2           So they get to somehow talk about it and we don't get

3    to respond?  That can't be right.  One of the references

4    they're complaining about, Stahly 2007.  We're not relying on

5    that as prior art, we're relying on it to just show some --

6    you know, that one of the allegations that the plaintiffs had

7    made in their own contentions about the state of the art were

8    wrong.

9           So for the plaintiffs to start saying that, you know,

10   that we can't somehow talk about the knowledge and skill sets

11   of a person of ordinary skill in the art would mean to set

12   this trial up for failure because the expert has to be able to

13   talk about that.  They may disagree with it and that's the

14   topic of cross-examination, but it's not something that we

15   were required to disclose in the -- under the local rules and

16   didn't.  If it's involved in the prior art, we've got it

17   disclosed.

18           THE COURT:  Okay.  Thank you.

19           All right.  Counsel, I think the record is extensive.

20   Your written submissions were terrific, oral argument, the

21   same.  The Court is reserving decision.  I want to get the

22   transcript of this argument.

23           I'm going to do one of two things.  I'm either going

24   to reconvene this call to just fine-tune a couple of

25   questions, or just read an oral opinion into the record to be

 1  confirmed with an order.

 2         Either way, the next call we have, the Court's going

 3  to rule.  It's just a matter if we may have a second session

 4  of oral argument, and I don't know right now.  I'm aware of

 5  the trial date, I know the issue should be addressed promptly,

 6  and will.  I thank you for your extensive effort.

 7         For the good of the order, are there any other issues

 8  or matters we need to address before we adjourn?

 9         MS. JAMES:  This is Colleen James.  No, for

10  plaintiffs, Your Honor.  Thank you very much for your time.

11         MS. MAZZOCHI:  On behalf of the defendants, Your

12  Honor, we certainly will try and go through the transcript as

13  well and if there's lack of clarity, we apologize in advance

14  and we will certainly try to address that.

15         In view of some of the assertions that were made by

16  the plaintiffs today, you may see an additional round of

17  motions to strike from us based on what some of the standards

18  are going to be that they propose.

19         MR. BATON:  Your Honor, this is Bill Baton.  There is

20  an issue.  You know, I know Your Honor -- we're trying to

21  observe Your Honor's directive that all, you know, deadlines

22  remain in place.  I don't know if you're aware, but there were

23  some discussions in the related case, the compound case before

24  Chief Judge Wolfson and Judge Arpert.  There was a final

25  pretrial conference and that case was supposed to go to trial

1    in May and that is very much up in the air at this time.

2          I believe Mr. Sterns was on the phone -- just been in

3    that conference, and there are some complications with respect

4    to the compound case that we voiced previously wherein we

5    believe that the polymorph case and the parties to it would be

6    better served to have the compound case go first, and, you

7    know, the parties are discussing that, but we're not informed

8    yet as to where Chief Judge Wolfson is going with that trial.

9          And to the extent that there is some change in that

10   schedule, you might be hearing from the parties.  Obviously,

11   we're not asking you to decide anything at the moment, but we

12   do want to make you aware of that, that there may be some

13   wrinkles in between the two cases that we may need to have the

14   Court address.

15         THE COURT:  What I would just ask is if there's any

16   questions or issues to address regarding the scheduling of the

17   trial, you should direct that correspondence to Judge Bumb,

18   you could copy me on the letter, but Judge Bumb is going to

19   decide all issues regarding trial scheduling, so she should

20   get your letter.

21         MR. BATON:  Absolutely, Your Honor.  Thank you for

22   that guidance.

23         THE COURT:  And thank you all.  I hope you all stay

24   safe.  You'll be hearing from the Court.  We're adjourned.

25         Thank you again to the court reporter.

1          RESPONSE:  Thank you, Your Honor.

2          (3:58 p.m.)

3          -  -  -  -  -  -  -  -  -  -  -  -  -  -  -  -  -

4

5          I certify that the foregoing is a correct transcript

6    from the record of proceedings in the above-entitled matter.

7

8    /S/ Karen Friedlander, CRR, RMR
     Court Reporter/Transcriber_____

9

10   April 15, 2020
     Date

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

## '
**-**

*'18* [1] - 56:16
*'202* [3] - 16:17, 16:22, 18:23
*'326* [9] - 40:6, 40:12, 42:5, 42:7, 42:12, 42:15, 43:1, 43:10, 43:11
*'582* [18] - 13:11, 13:14, 13:21, 14:24, 16:21, 17:23, 18:14, 18:15, 18:22, 19:7, 19:10, 21:21, 24:3, 32:9, 32:21, 37:21, 38:10, 42:8

## /

*/S* [1] - 68:8

## 0

*06830* [1] - 2:21
*07068* [1] - 2:7
*07102-5426* [1] - 1:15
*07920* [1] - 3:13
*07932* [1] - 2:24
*08002* [1] - 3:7
*08540* [1] - 2:10
*08816* [1] - 2:17

## 1

*1* [46] - 7:16, 13:11, 13:17, 14:23, 15:4, 15:5, 15:11, 15:24, 15:25, 16:17, 16:21, 17:22, 17:25, 18:1, 18:9, 18:14, 18:15, 18:22, 18:23, 19:7, 19:23, 20:14, 21:5, 21:8, 21:10, 21:20, 22:21, 23:7, 24:3, 24:13, 25:2, 26:2, 29:9, 29:12, 29:13, 33:2, 33:19, 42:8, 45:7, 45:10, 48:1, 55:16, 64:8
*10010* [1] - 1:20
*10019* [1] - 3:4
*101* [1] - 18:5
*104* [3] - 2:17, 20:22, 22:7
*110* [2] - 20:22, 22:7
*1100* [1] - 3:9
*112* [13] - 10:3, 11:12, 11:24, 12:5, 12:10, 12:11, 13:25, 15:7, 15:14, 17:11, 30:21, 39:5, 39:19

*112(b* [1] - 18:5
*114* [1] - 20:18
*12* [1] - 9:16
*128* [1] - 35:23
*1336* [1] - 41:17
*1345* [1] - 41:17
*14* [1] - 1:10
*142* [3] - 10:4, 12:7, 20:6
*15* [3] - 10:18, 10:19, 68:10
*1520* [1] - 1:15
*15th* [1] - 25:23
*1633* [1] - 3:3
*17-5005* [2] - 1:4, 4:3
*1700* [1] - 2:20
*18* [2] - 2:17, 2:23
*1810* [1] - 3:6
*19* [1] - 9:15
*1901* [1] - 3:16
*197* [1] - 2:17
*1991* [1] - 43:15

## 2

*2* [7] - 18:21, 25:2, 25:15, 29:6, 45:13, 49:18
*2(b)(2* [1] - 21:19
*20* [2] - 6:9, 9:19
*200* [1] - 2:23
*20005* [1] - 3:10
*2002* [1] - 64:24
*20036* [1] - 3:16
*2007* [1] - 65:4
*2008* [1] - 44:21
*2018* [14] - 9:12, 9:13, 9:14, 9:15, 9:16, 13:1, 23:14, 41:4, 41:18, 44:21, 55:16, 55:20, 56:8, 56:17
*2019* [1] - 41:2
*2020* [8] - 1:10, 6:9, 9:6, 9:18, 9:19, 9:21, 10:9, 68:10
*21* [1] - 2:10
*22nd* [2] - 7:17, 9:21
*24* [2] - 10:10, 42:5
*24th* [1] - 51:24
*25* [3] - 42:5, 42:7, 42:15
*253* [1] - 10:2
*278* [1] - 10:2
*298* [1] - 10:2
*299* [2] - 10:1, 45:23
*29th* [1] - 9:13
*2:00* [1] - 1:10
*2nd* [1] - 10:9

## 3

*3* [30] - 13:13, 13:17, 13:20, 14:16, 15:3, 15:5, 15:11, 15:20, 16:17, 17:19, 17:23, 18:9, 18:15, 18:22, 18:23, 19:10, 19:15, 19:16, 19:19, 19:22, 19:24, 20:14, 20:16, 21:16, 21:17, 37:18, 37:20, 38:10, 45:15
*3.3* [1] - 9:10
*3.3(b* [1] - 18:4
*3.7* [1] - 9:10
*30* [4] - 9:12, 9:14, 56:8, 56:15
*304* [1] - 19:13
*308* [1] - 59:17
*309* [1] - 60:13
*30th* [3] - 55:16, 55:20, 56:17
*313* [1] - 60:16
*32* [1] - 20:13
*326* [1] - 10:2
*35* [1] - 16:16
*365* [2] - 10:1, 45:23
*388* [1] - 43:15
*390* [1] - 43:15
*3:30* [1] - 49:14
*3:58* [1] - 68:2

## 4

*4* [29] - 13:13, 13:17, 13:20, 14:16, 15:3, 15:5, 15:11, 15:20, 17:19, 17:24, 18:9, 18:15, 18:22, 19:10, 19:15, 19:16, 19:19, 19:22, 19:24, 20:14, 20:16, 37:18, 37:20, 49:19, 49:20, 49:24, 52:20, 57:12
*42* [1] - 20:17
*455* [1] - 2:13
*46* [7] - 14:21, 15:6, 18:14, 19:5, 32:20, 33:17, 34:5
*47* [4] - 15:25, 31:5, 33:17, 34:5

## 5

*5* [8] - 2:7, 16:17, 18:23, 53:14, 53:18, 53:19, 53:23, 61:20
*500* [1] - 2:4
*51* [1] - 1:19
*52* [2] - 19:9, 31:5

*54* [1] - 21:18
*56* [1] - 48:12
*58* [1] - 38:9

## 6

*6* [15] - 2:3, 18:22, 19:10, 51:18, 52:7, 52:15, 53:14, 53:15, 53:18, 53:19, 53:23, 57:7, 61:18, 61:20
*600* [1] - 3:9
*600-page* [2] - 52:22, 53:3
*600-page-plus* [1] - 53:11
*60611* [1] - 2:14
*60654* [1] - 2:4
*645* [1] - 3:12

## 7

*7* [12] - 9:6, 9:18, 18:22, 19:10, 53:14, 53:15, 53:18, 53:19, 53:22, 53:23, 61:18, 61:20
*756-0160* [1] - 1:23

## 8

*8* [3] - 53:18, 53:22, 53:24
*856* [1] - 1:23
*878* [1] - 41:17

## 9

*9* [6] - 53:14, 53:15, 53:18, 53:19, 53:23, 58:18
*95* [3] - 10:4, 12:7, 20:6
*952* [1] - 43:15

## A

*abandoned* [1] - 22:19
*ability* [1] - 21:10
*able* [8] - 27:9, 32:18, 43:9, 44:20, 46:4, 53:9, 61:17, 65:12
*above-entitled* [1] - 68:6
*Abraham* [1] - 5:8
*ABRAHAM* [2] - 2:9, 5:7
*absence* [2] - 8:20, 25:11
*absolutely* [4] - 11:7, 50:1, 54:19, 67:21

*accept* [2] - 8:11, 31:1
*accepts* [1] - 20:9
*accrued* [1] - 36:13
*accusations* [1] - 28:9
*accused* [1] - 62:18
*Act* [1] - 15:15
*ACTION* [1] - 1:3
*actions* [1] - 28:22
*activities* [1] - 31:21
*add* [5] - 31:22, 32:3, 51:15, 52:20, 53:12
*added* [1] - 63:21
*adding* [1] - 52:15
*addition* [4] - 21:22, 45:15, 55:9, 63:7
*additional* [1] - 66:16
*additionally* [1] - 21:13
*address* [8] - 10:12, 28:21, 46:25, 60:4, 66:8, 66:14, 67:14, 67:16
*addressed* [2] - 29:24, 66:5
*addressing* [2] - 56:17, 59:14
*adjourn* [1] - 66:8
*adjourned* [1] - 67:24
*admit* [1] - 40:19
*admitted* [3] - 8:12, 25:14, 60:6
*adopted* [3] - 31:15, 31:19, 37:12
*advance* [2] - 13:19, 66:13
*advise* [1] - 6:24
*afternoon* [9] - 4:6, 4:13, 4:24, 5:2, 5:7, 5:11, 5:16, 5:20, 5:25
*AGNELLO* [1] - 2:6
*agree* [5] - 11:14, 16:10, 39:14, 47:22, 54:15
*agreed* [1] - 46:6
*agrees* [1] - 20:5
*ahead* [3] - 7:19, 28:13, 52:18
*aided* [1] - 1:24
*air* [1] - 67:1
*al* [2] - 1:4, 1:7
*allegations* [1] - 65:6
*alleged* [3] - 8:18, 13:14, 32:24
*allegedly* [5] - 29:20, 33:25, 40:4, 48:6, 63:14
*allotted* [1] - 47:21
*allow* [4] - 11:5, 24:8, 29:21, 33:10

*allowed* [6] - 32:14,
34:23, 43:1, 43:19,
51:14, 63:4
*allowing* [1] - 38:25
*allows* [2] - 35:25,
36:10
*alluded* [1] - 8:10
*almost* [1] - 62:1
*alone* [1] - 42:13
*amend* [7] - 31:21,
32:1, 32:2, 36:17,
37:23, 38:1, 41:8
*amount* [3] - 34:18,
35:20
*amounts* [1] - 34:3
*analyses* [1] - 16:20
*analysis* [5] - 15:7,
16:7, 16:13, 21:19,
22:1
*analytical* [1] - 36:2
*ANDERSON* [1] - 2:3
*Anderson* [1] - 5:1
*announce* [1] - 6:6
*answer* [3] - 10:14,
57:6, 57:8
*answers* [1] - 32:12
*anticipate* [2] - 7:4,
40:18
*anticipated* [2] - 50:6,
53:6
*anticipates* [1] - 6:11
*anticipation* [10] -
10:2, 11:11, 39:15,
40:3, 40:5, 40:9,
41:11, 41:22, 44:8,
44:9
*apologize* [2] - 21:2,
66:13
*appear* [2] - 52:8,
60:23
*appearance* [2] - 4:3,
5:5
*appeared* [1] - 50:18
*application* [10] - 6:9,
8:6, 9:4, 9:19, 30:7,
31:9, 45:20, 47:5,
47:11, 48:18
*Application* [1] - 40:6
*applied* [3] - 15:17,
16:13, 38:25
*applies* [3] - 15:1,
22:1, 34:15
*apply* [2] - 18:9, 19:22
*appreciate* [1] - 13:23
*appreciated* [1] -
56:14
*approach* [2] - 23:17,
47:6
*approximate* [3] -
33:9, 34:22, 35:18

*April* [2] - 1:10, 68:10
*areas* [2] - 7:22, 9:24
*argue* [8] - 12:5, 23:8,
23:15, 27:3, 29:6,
31:18, 31:24, 59:17
*argued* [8] - 24:12,
33:7, 34:1, 34:16,
34:20, 34:22, 35:13,
42:5
*arguing* [5] - 8:4,
22:24, 24:5, 40:4,
51:11
*argument* [93] - 4:21,
6:8, 6:12, 6:14, 6:21,
6:25, 7:2, 7:3, 7:5,
7:7, 7:23, 7:24, 8:8,
8:11, 8:17, 9:7, 10:3,
10:4, 11:1, 11:4,
11:11, 11:12, 11:20,
11:21, 11:25, 12:6,
13:11, 13:20, 13:24,
13:25, 14:1, 14:10,
14:11, 17:18, 19:13,
19:15, 19:19, 19:23,
20:10, 20:11, 20:13,
22:10, 22:12, 22:13,
22:18, 22:19, 22:20,
22:23, 23:5, 23:18,
23:22, 24:11, 25:3,
26:23, 26:24, 26:25,
27:10, 27:12, 27:20,
27:23, 28:14, 28:22,
28:24, 29:19, 30:4,
30:7, 30:8, 30:19,
30:21, 31:6, 31:9,
31:22, 32:4, 32:19,
32:20, 33:16, 35:5,
36:13, 39:20, 40:2,
40:3, 40:9, 40:11,
40:16, 41:11, 44:14,
44:23, 52:5, 65:20,
65:22, 66:4
*ARGUMENT* [1] - 1:5
*arguments* [17] - 9:2,
9:23, 13:2, 13:8,
13:9, 15:4, 19:16,
29:15, 30:25, 37:8,
37:10, 37:25, 38:2,
38:3, 49:1, 53:11,
62:13
*ARNSTEIN* [1] - 1:14
*Arnstein* [1] - 4:7
*Arpert* [1] - 66:24
*Art* [1] - 62:7
*art* [40] - 22:15, 22:25,
23:2, 25:4, 25:7,
25:10, 25:21, 26:11,
27:14, 27:18, 27:19,
29:8, 29:21, 33:2,
40:20, 41:22, 42:1,

42:14, 42:18, 42:23,
43:3, 43:17, 43:21,
43:25, 44:12, 46:8,
48:7, 49:12, 54:4,
61:10, 61:15, 64:10,
64:13, 64:15, 64:17,
64:21, 65:5, 65:7,
65:11, 65:16
*art's* [1] - 42:2
*article* [2] - 51:9,
64:15
*articulated* [1] - 18:8
*aside* [1] - 15:13
*assert* [4] - 21:5,
29:17, 35:4, 38:10
*asserted* [10] - 13:17,
14:23, 15:10, 18:6,
18:7, 20:15, 21:22,
48:6, 48:8, 51:8
*Asserted* [5] - 18:20,
18:21, 19:6, 19:21
*asserting* [3] - 13:16,
15:12, 15:18
*assertion* [1] - 25:24
*assertions* [1] - 66:15
*associated* [1] - 12:11
*assume* [1] - 29:17
*assuming* [1] - 54:8
*Aurobindo* [3] - 2:18,
2:21, 5:13
*AUROBINDO* [1] - 1:7
*available* [1] - 28:16
*Ave* [1] - 3:9
*Avenue* [3] - 1:19,
2:20, 3:6
*aware* [8] - 7:14, 9:11,
41:5, 44:15, 48:20,
66:4, 66:22, 67:12

*B*

*backdoor* [1] - 63:17
*background* [5] -
10:5, 10:22, 11:6,
14:22, 49:11
*bad* [2] - 8:20, 8:23
*bar* [1] - 55:25
*base* [1] - 41:11
*based* [6] - 15:8, 18:5,
33:18, 40:5, 40:11,
66:17
*basic* [2] - 12:24,
14:11
*basis* [3] - 18:7, 32:3,
40:15
*Basking* [1] - 3:13
*BATON* [7] - 1:14, 4:6,
10:7, 10:24, 11:8,
66:19, 67:21
*Baton* [5] - 4:7, 10:7,

10:15, 10:24, 66:19
*Baton's* [1] - 17:17
*Baxter* [1] - 43:15
*bear* [2] - 51:25, 54:25
*Becker* [1] - 2:7
*become* [1] - 31:12
*beginning* [3] - 13:4,
18:19, 26:17
*begins* [2] - 20:14,
31:4
*behalf* [8] - 5:3, 5:10,
6:1, 17:9, 17:15,
54:16, 55:8, 66:11
*belief* [1] - 15:10
*benefit* [1] - 6:6
*BENSON* [1] - 3:2
*Benson* [1] - 5:19
*Berenstein* [1] - 64:24
*Bergman* [1] - 5:15
*BERGMAN* [1] - 2:19
*best* [1] - 39:25
*better* [3] - 6:23, 45:4,
67:6
*between* [5] - 41:19,
43:5, 50:5, 57:22,
67:13
*beyond* [2] - 16:6,
36:22
*Bill* [4] - 4:6, 10:7,
10:24, 66:19
*bit* [11] - 6:14, 6:19,
7:5, 7:11, 10:10,
28:8, 49:18, 49:25,
50:6, 57:21
*black* [1] - 14:15
*blah* [1] - 34:9
*bonding* [1] - 58:24
*book* [2] - 52:23, 53:3
*bounds* [1] - 32:24
*brand* [3] - 53:12,
53:15, 53:21
*break* [1] - 13:24
*BRIAN* [1] - 1:19
*Brian* [1] - 4:16
*brief* [5] - 31:24,
51:18, 51:23, 52:7,
58:9
*briefing* [2] - 31:13,
32:10
*BRINKS* [1] - 2:12
*Brinks* [1] - 5:10
*Broadway* [1] - 3:3
*BRODY* [1] - 2:6
*broke* [1] - 19:13
*broken* [1] - 19:25
*Brunswick* [1] - 2:17
*bucket* [14] - 12:10,
45:2, 45:7, 45:10,
45:13, 45:15, 45:25,
46:1, 57:15, 57:17,

62:5, 62:6, 63:6,
63:7
*buckets* [2] - 45:1,
45:6
*bulk* [1] - 39:7
*Bumb* [3] - 31:15,
67:17, 67:18
*burden* [3] - 8:19,
8:21, 48:19
*BY* [14] - 1:14, 1:17,
2:2, 2:6, 2:9, 2:12,
2:16, 2:19, 2:23, 3:2,
3:6, 3:9, 3:12, 3:15
*bye* [1] - 50:2
*bye-bye* [1] - 50:2
*Byrne* [1] - 5:3
*BYRNE* [1] - 2:6

*C*

*canagliflozin* [23] -
16:3, 21:20, 22:16,
22:22, 22:23, 23:1,
23:3, 23:9, 24:4,
24:5, 24:7, 24:13,
24:17, 25:5, 29:14,
29:22, 32:22, 33:3,
35:11, 42:6, 42:17,
59:1, 59:6
*cannot* [1] - 50:15
*capital* [1] - 18:20
*Carella* [1] - 5:3
*CARELLA* [1] - 2:6
*case* [29] - 6:14, 6:18,
7:14, 13:3, 13:17,
23:17, 26:18, 27:15,
28:17, 31:17, 31:21,
36:16, 41:15, 41:19,
43:12, 43:14, 43:16,
44:16, 47:23, 50:8,
51:1, 52:13, 66:23,
66:25, 67:4, 67:5,
67:6
*cases* [3] - 6:15,
46:10, 67:13
*catch* [1] - 24:1
*catchall* [1] - 63:9
*categories* [1] - 11:14
*Category* [1] - 48:1
*CATHERINE* [1] - 1:18
*Catherine* [1] - 4:16
*CECCHI* [1] - 2:6
*centers* [1] - 17:22
*certain* [7] - 15:8,
34:18, 34:19, 41:20,
43:17, 61:12, 62:12
*certainly* [8] - 6:23,
7:12, 17:25, 39:4,
47:14, 56:5, 66:12,
66:14

*certainty* [2] - 33:4, 33:5
*certify* [1] - 68:5
*cetera* [1] - 34:19
*challengers* [1] - 43:19
*change* [1] - 67:9
*Chapel* [1] - 3:6
*chart* [7] - 51:18, 51:20, 52:7, 52:8, 57:7, 61:15, 63:20
*charts* [3] - 58:11, 58:14, 61:18
*check* [1] - 22:8
*Cherry* [1] - 3:7
*Chicago* [2] - 2:4, 2:14
*Chief* [2] - 66:24, 67:8
*choose* [1] - 63:16
*choosing* [1] - 21:5
*chromatography* [1] - 59:18
*Circuit* [4] - 41:18, 41:23, 41:25, 43:15
*circumstances* [1] - 6:22
*citation* [2] - 43:25, 51:3
*citations* [1] - 42:19
*cite* [3] - 37:4, 44:16, 61:17
*cited* [13] - 9:9, 32:9, 33:12, 41:6, 45:14, 48:13, 50:24, 51:9, 51:12, 52:25, 62:11, 62:13, 64:25
*cites* [3] - 43:14, 48:11, 59:18
*citing* [5] - 37:5, 53:3, 53:5, 58:23, 64:25
*Cityfront* [1] - 2:13
*CIVIL* [1] - 1:3
*Claim* [39] - 13:11, 13:17, 14:16, 14:23, 15:4, 15:5, 15:11, 15:24, 15:25, 16:21, 17:22, 17:25, 18:1, 18:9, 18:14, 18:15, 19:7, 19:16, 19:23, 20:14, 21:5, 21:8, 21:10, 21:15, 21:16, 21:17, 21:20, 24:3, 29:9, 33:1, 33:19, 37:18, 38:10, 42:8
*claim* [23] - 13:16, 14:24, 16:8, 19:13, 21:16, 22:1, 24:6, 31:10, 31:12, 31:15, 33:7, 33:22, 34:23, 35:12, 38:24, 40:18, 48:6, 48:8, 49:11,

58:11, 58:14
*claimed* [2] - 22:16, 29:9
*Claims* [24] - 13:13, 13:17, 13:20, 15:3, 15:5, 15:11, 15:20, 16:17, 17:23, 18:20, 18:22, 18:23, 19:6, 19:10, 19:15, 19:19, 19:21, 19:22, 19:24, 20:16, 37:20
*claims* [21] - 14:23, 15:10, 15:12, 15:18, 16:5, 16:14, 18:6, 19:23, 21:22, 21:25, 22:2, 22:3, 24:3, 27:4, 27:13, 33:4, 33:23, 34:16, 39:1, 63:14
*clarification* [1] - 20:21
*clarify* [2] - 7:21, 56:11
*clarity* [2] - 32:24, 66:13
*classic* [1] - 40:20
*clear* [8] - 8:3, 9:1, 18:13, 21:12, 35:2, 35:5, 48:4, 51:6
*clearer* [1] - 14:16
*clearly* [3] - 6:21, 38:12, 57:8
*close* [2] - 34:9, 42:2
*closed* [1] - 7:10
*clue* [1] - 21:15
*co* [1] - 4:11
*co-counsel* [1] - 4:11
*Cockcroft* [23] - 9:5, 17:11, 18:8, 20:12, 21:6, 23:7, 26:12, 27:25, 29:24, 30:8, 30:23, 32:3, 33:11, 35:17, 37:9, 37:14, 37:17, 38:20, 38:23, 39:12, 54:20, 55:8, 64:25
*Cockcroft's* [13] - 10:4, 13:7, 13:22, 22:17, 23:4, 23:13, 24:12, 29:18, 31:4, 32:8, 35:23, 37:8, 38:4
*Cohen* [1] - 5:21
*COHEN* [2] - 3:6, 5:20
*colleague* [3] - 5:1, 10:11, 11:3
*colleagues* [1] - 4:15
*COLLEEN* [1] - 1:17
*Colleen* [7] - 4:14, 10:12, 11:13, 19:2,

37:3, 44:6, 66:9
*Columbia* [1] - 2:23
*combination* [11] - 45:5, 50:21, 50:23, 53:2, 53:7, 53:18, 58:12, 58:16, 60:21, 63:16, 64:13
*Combination* [3] - 52:20, 58:18, 63:8
*combinations* [23] - 45:11, 45:16, 46:2, 50:19, 51:5, 51:8, 51:15, 52:8, 52:11, 52:16, 53:4, 53:12, 53:14, 53:15, 53:19, 54:4, 57:18, 58:8, 61:19, 63:10, 63:12, 63:22
*Combinations* [2] - 48:2, 53:14
*combined* [1] - 57:25
*coming* [1] - 58:13
*Commencing* [1] - 1:10
*Company* [1] - 41:17
*comparison* [1] - 6:17
*compel* [1] - 25:19
*complain* [1] - 64:25
*complained* [2] - 39:2, 60:15
*complaining* [2] - 32:8, 65:4
*completely* [2] - 32:3, 36:7
*complex* [1] - 11:22
*complicated* [5] - 6:16, 7:2, 12:2, 12:16
*complications* [1] - 67:3
*complies* [1] - 17:20
*comply* [1] - 8:19
*compound* [6] - 24:15, 35:12, 37:13, 66:23, 67:4, 67:6
*comprised* [1] - 52:23
*comprising* [1] - 35:11
*compromises* [1] - 8:14
*computer* [1] - 1:24
*computer-aided* [1] - 1:24
*concept* [2] - 37:15, 60:17
*concepts* [1] - 51:11
*concern* [1] - 56:4
*concerned* [4] - 7:17, 11:23, 24:16, 55:1
*concluded* [1] - 9:1
*conclusion* [1] - 58:1

*conditions* [1] - 36:4
*conducted* [1] - 23:6
*confer* [1] - 8:14
*conference* [4] - 7:16, 50:4, 66:25, 67:3
*confirm* [1] - 49:12
*confirmation* [1] - 9:22
*confirmed* [1] - 66:1
*confirms* [1] - 44:1
*confuses* [1] - 41:25
*consider* [1] - 56:24
*considered* [1] - 56:22
*construction* [14] - 31:12, 31:13, 31:14, 31:15, 32:15, 33:7, 34:23, 35:12, 35:15, 36:14, 37:11, 38:25
*construe* [1] - 33:6
*construed* [1] - 35:10
*contain* [1] - 13:19
*contend* [2] - 34:8, 36:20
*contended* [3] - 16:4, 26:8, 36:23
*contention* [21] - 9:17, 14:17, 15:7, 26:8, 26:14, 26:24, 30:2, 33:19, 36:17, 43:7, 44:1, 44:2, 51:2, 53:9, 55:20, 60:7, 60:10, 60:11, 60:14, 60:18, 61:8
*contentions* [129] - 6:18, 8:22, 9:12, 9:13, 9:15, 12:25, 13:2, 13:5, 13:8, 13:9, 13:10, 13:13, 13:19, 14:21, 15:9, 15:25, 16:13, 16:16, 16:24, 17:3, 17:5, 17:19, 17:24, 18:11, 19:4, 19:8, 19:18, 21:17, 22:11, 22:13, 22:20, 23:11, 23:23, 25:17, 27:17, 27:24, 29:4, 29:10, 29:12, 30:6, 31:8, 31:10, 31:22, 32:1, 32:2, 32:16, 33:15, 35:21, 36:20, 36:24, 37:7, 37:16, 37:19, 37:23, 38:1, 38:9, 38:13, 38:18, 38:19, 39:2, 39:4, 39:9, 40:8, 40:11, 40:15, 41:6, 41:9, 41:11, 42:5, 42:20, 44:16, 46:2, 46:3, 48:13, 50:14, 50:16, 50:17, 51:10,

51:16, 52:10, 52:21, 53:3, 53:8, 53:13, 53:16, 53:20, 53:24, 54:4, 54:7, 54:9, 54:10, 54:23, 54:24, 55:14, 55:15, 56:8, 56:12, 56:13, 56:16, 56:18, 56:23, 56:24, 56:25, 57:18, 58:11, 58:14, 59:4, 59:5, 59:15, 59:19, 59:23, 60:1, 60:2, 60:22, 61:1, 61:11, 61:19, 62:11, 62:20, 62:21, 62:23, 63:1, 63:10, 63:23, 65:1, 65:7
*Contentions* [2] - 48:2, 48:3
*contesting* [1] - 10:1
*context* [2] - 8:14, 28:20
*continue* [4] - 10:14, 12:24, 50:11, 52:5
*CONTINUED* [2] - 2:1, 3:1
*contradict* [1] - 62:21
*contradicts* [1] - 59:23
*conventional* [1] - 42:16
*conversation* [1] - 12:24
*coordinate* [1] - 4:8
*copy* [1] - 67:18
*coronavirus* [1] - 6:20
*CORPORATION* [1] - 1:4
*correct* [19] - 10:6, 11:10, 16:23, 17:1, 17:2, 17:7, 22:9, 26:14, 30:21, 31:3, 34:11, 44:2, 46:12, 51:24, 54:8, 54:12, 55:16, 55:17, 68:5
*correction* [1] - 10:8
*correspondence* [1] - 67:17
*COSNER* [1] - 2:15
*Cosner* [2] - 5:12, 5:14
*counsel* [15] - 4:4, 4:5, 4:7, 4:11, 4:19, 5:1, 5:12, 5:17, 5:22, 10:5, 10:8, 21:14, 37:4, 50:3, 65:19
*Counsel* [5] - 34:5, 36:12, 49:13, 49:18, 61:23
*counterclaims* [1] - 21:7
*couple* [2] - 6:13, 65:24

*course* [4] - 14:9, 24:2, 31:20, 52:2
*Court* [4] - 1:22, 28:16, 64:11, 66:8
*COURT* [1] - 1:1
*Court's* [10] - 8:2, 8:18, 10:25, 11:2, 14:12, 31:25, 47:15, 56:16, 57:9, 66:2
*cover* [9] - 27:4, 32:18, 34:1, 34:21, 34:24, 35:15, 35:25, 36:10, 39:1
*covered* [4] - 24:8, 26:11, 30:18, 30:22
*covers* [3] - 24:6, 34:9, 36:21
*cross* [1] - 65:14
*cross-examination* [1] - 65:14
*CRR* [1] - 68:8
*crux* [1] - 10:21
*crystal* [3] - 18:13, 35:19, 36:5
*crystalline* [29] - 15:1, 16:3, 21:20, 24:3, 24:4, 24:7, 32:18, 32:22, 33:1, 33:2, 33:11, 34:2, 34:8, 34:14, 34:17, 34:21, 34:24, 35:3, 35:9, 35:10, 35:16, 36:1, 36:7, 36:10, 36:21, 59:8
*CT* [1] - 2:21
*cumbersome* [1] - 7:11
*current* [1] - 6:22
*cut* [3] - 11:6, 14:4, 28:11

### D

*D.C* [1] - 3:16
*data* [4] - 25:21, 26:1, 26:3, 26:16
*date* [2] - 9:21, 66:5
*Date* [1] - 68:10
*dated* [1] - 55:16
*days* [1] - 6:20
*DC* [1] - 3:10
*de* [1] - 41:17
*deadline* [1] - 25:23
*deadlines* [3] - 7:14, 7:15, 66:21
*deal* [2] - 7:22, 45:3
*dealing* [3] - 9:4, 17:5, 55:21
*DEANNE* [2] - 2:2, 4:24

*Deanne* [1] - 4:24
*debate* [1] - 44:7
*December* [1] - 41:2
*decide* [3] - 63:25, 67:11, 67:19
*decided* [2] - 23:20, 47:5
*decision* [8] - 6:25, 7:13, 8:2, 8:6, 20:4, 37:23, 64:11, 65:21
*declaration* [1] - 41:20
*declaratory* [1] - 21:7
*defects* [1] - 36:5
*defend* [1] - 21:9
*Defendant* [14] - 2:5, 2:8, 2:11, 2:14, 2:18, 2:21, 2:24, 3:4, 3:7, 3:10, 3:13, 3:17, 14:15, 57:19
*defendant* [15] - 8:19, 8:22, 14:3, 14:13, 17:10, 24:23, 28:14, 28:18, 29:11, 41:13, 51:14, 52:24, 62:16, 63:17, 64:7
*defendants* [56] - 4:25, 5:3, 5:4, 8:12, 11:17, 13:10, 16:11, 17:9, 17:12, 17:15, 19:12, 21:7, 21:18, 22:12, 22:19, 23:11, 23:15, 24:5, 29:5, 31:10, 31:17, 31:21, 32:5, 37:24, 38:9, 40:17, 40:19, 41:5, 44:18, 48:5, 48:15, 48:19, 48:21, 49:5, 49:7, 50:13, 50:25, 51:10, 52:15, 52:20, 53:4, 54:2, 54:7, 55:9, 55:14, 55:19, 55:25, 56:7, 57:14, 57:16, 58:19, 62:10, 62:11, 63:21, 64:2, 66:11
*Defendants* [1] - 1:8
*defendants'* [16] - 9:11, 12:25, 14:10, 14:21, 15:10, 37:4, 46:17, 47:3, 47:7, 47:12, 48:11, 48:23, 49:11, 50:18, 52:10, 54:10
*defense* [3] - 4:5, 4:19, 41:23
*defenses* [1] - 15:17
*defer* [1] - 10:25
*deficiencies* [2] - 8:18, 8:22, 13:14
*define* [1] - 37:15

*defined* [1] - 18:19
*delayed* [1] - 7:18
*dependent* [5] - 15:4, 16:8, 21:25, 22:2, 22:3
*deposition* [1] - 37:5
*depositions* [2] - 46:19, 49:4
*deprived* [1] - 49:4
*described* [1] - 52:21
*describes* [2] - 40:2, 42:8
*description* [22] - 12:11, 13:10, 13:12, 13:15, 13:20, 14:2, 14:3, 14:5, 15:13, 16:1, 16:6, 16:9, 16:18, 16:20, 18:5, 19:15, 19:19, 19:22, 20:8, 20:9, 20:13, 20:17
*Deseraju* [1] - 50:24
*detail* [3] - 26:9, 29:4
*detailed* [2] - 6:16, 18:7
*detective* [1] - 51:7
*developed* [1] - 38:19
*die* [1] - 25:5
*difference* [1] - 35:24
*differences* [1] - 36:2
*different* [17] - 6:15, 12:10, 22:18, 22:23, 22:24, 23:17, 29:10, 29:15, 33:11, 35:16, 36:1, 36:4, 36:11, 45:14, 52:23, 52:24, 58:4
*differently* [1] - 26:16
*difficulty* [1] - 43:9
*digest* [1] - 7:4
*direct* [1] - 67:17
*directive* [1] - 66:21
*directly* [1] - 58:14
*disagree* [3] - 15:16, 62:17, 65:13
*disagreement* [1] - 55:11
*disclose* [3] - 38:15, 40:11, 45:10, 49:6, 50:20, 52:10, 61:5, 65:15
*disclosed* [46] - 13:2, 13:8, 14:17, 18:11, 23:22, 30:2, 30:4, 30:5, 33:16, 33:24, 33:25, 36:22, 39:9, 40:23, 45:13, 46:2, 46:3, 48:16, 49:8, 49:9, 49:10, 50:14, 50:15, 50:17, 51:16,

53:13, 53:15, 53:20, 53:23, 53:24, 54:9, 54:14, 54:22, 57:18, 58:15, 58:16, 58:24, 59:6, 59:10, 59:11, 60:20, 61:19, 64:5, 65:17
*Disclosed* [3] - 48:2, 48:3, 62:7
*discloses* [2] - 42:6, 51:11
*disclosing* [1] - 51:13
*disclosure* [6] - 14:19, 34:12, 34:13, 40:21, 43:11, 63:12
*disclosures* [1] - 13:19
*disconnect* [1] - 57:22
*discoveries* [1] - 13:4
*discovery* [10] - 13:5, 25:13, 25:18, 28:15, 28:17, 28:18, 28:20, 28:23, 44:17, 44:21
*discussed* [1] - 21:15
*discussing* [1] - 67:7
*discussion* [5] - 11:15, 12:23, 37:20, 40:8, 40:12
*discussions* [2] - 12:19, 66:23
*dispute* [21] - 7:22, 8:7, 9:3, 17:4, 17:22, 18:12, 18:16, 25:12, 28:17, 28:20, 33:20, 34:12, 38:14, 41:19, 42:4, 49:7, 49:9, 50:13, 50:15, 59:10
*disputes* [2] - 11:10, 33:22
*disputing* [2] - 14:25, 15:20
*distinct* [1] - 27:3
*distinction* [1] - 43:5
*DISTRICT* [2] - 1:1, 1:1
*divide* [1] - 39:18
*divorce* [1] - 36:7
*Docket* [2] - 4:2, 6:9
*docket* [1] - 4:4
*document* [6] - 40:5, 40:13, 40:20, 44:9, 48:20, 60:8
*documentary* [1] - 59:22
*documents* [22] - 28:9, 40:7, 40:10, 40:14, 40:22, 41:1, 41:3, 41:12, 42:11, 43:23, 44:11, 48:14, 48:17, 48:20, 48:24,

49:2, 49:6, 49:9, 50:13, 61:7
*done* [8] - 14:1, 22:1, 22:4, 26:15, 42:24, 59:19, 60:6, 62:17
*double* [1] - 22:8
*double-check* [1] - 22:8
*down* [2] - 6:7, 39:6
*Dr* [58] - 9:5, 13:7, 13:22, 17:11, 17:13, 18:8, 21:6, 22:17, 23:4, 23:7, 23:13, 24:12, 26:12, 27:25, 29:18, 29:24, 30:8, 31:4, 32:3, 32:8, 33:11, 35:17, 35:22, 35:23, 37:8, 37:9, 37:14, 37:17, 38:4, 38:20, 38:23, 39:12, 40:1, 40:2, 41:3, 41:10, 42:24, 43:8, 48:11, 53:1, 56:22, 56:24, 57:24, 58:21, 59:13, 59:14, 59:16, 59:24, 60:8, 62:13, 63:3, 63:11, 64:6, 64:19, 64:25
*Drive* [1] - 2:13
*DuPont* [1] - 41:17
*during* [10] - 25:18, 31:20, 32:11, 32:12, 33:7, 35:24, 36:8, 44:17, 44:21, 52:12
*duty* [2] - 39:4, 61:5

### E

*e-mail* [1] - 49:22
*E.I* [1] - 41:16
*early* [2] - 23:11, 49:2
*easier* [2] - 45:2, 51:19
*East* [2] - 2:17, 2:20
*Eckert* [1] - 4:11
*Eckhardt* [26] - 9:5, 10:1, 17:13, 41:3, 41:10, 42:24, 43:8, 45:24, 46:5, 48:11, 52:8, 54:20, 55:8, 56:22, 56:24, 57:24, 58:21, 59:13, 59:14, 59:24, 60:8, 62:13, 63:3, 63:11, 64:19
*Eckhardt's* [5] - 40:1, 40:2, 53:1, 59:16, 64:6
*effort* [1] - 66:6
*either* [7] - 7:4, 7:6, 8:23, 26:5, 46:24, 65:23, 66:2

**elements** [2] - 58:25
**EMANUEL** [1] - 1:17
**Emanuel** [3] - 4:14, 4:15, 10:12
**enable** [3] - 22:25, 23:2, 29:7
**enabled** [6] - 23:8, 24:18, 27:5, 27:7, 27:8, 43:2
**enablement** [18] - 12:11, 14:4, 15:14, 18:5, 18:25, 20:10, 20:23, 20:25, 22:5, 22:12, 22:18, 25:1, 25:9, 26:14, 26:24, 27:12, 27:20, 30:4
**encompass** [2] - 33:10, 33:20
**encompassed** [1] - 18:22
**end** [1] - 32:25
**endeavored** [2] - 12:18, 46:7
**ended** [1] - 64:4
**ends** [1] - 31:5
**enter** [2] - 4:3, 5:5
**entertain** [1] - 28:20
**entire** [4] - 13:3, 41:9, 46:10, 52:12
**entirely** [2] - 56:5, 62:14
**entirety** [2] - 12:7, 20:6
**entitled** [3] - 26:13, 41:10, 68:6
**environmental** [1] - 36:4
**equally** [1] - 15:5
**Eric** [1] - 5:8
**ERIC** [1] - 2:9
**ESQUIRE** [23] - 1:14, 1:17, 1:18, 1:18, 1:19, 2:2, 2:3, 2:6, 2:9, 2:12, 2:13, 2:16, 2:16, 2:19, 2:20, 2:23, 3:2, 3:3, 3:6, 3:9, 3:12, 3:15, 3:15
**essence** [3] - 8:12, 9:7, 14:11
**et** [3] - 1:4, 1:7, 34:19
**Etter** [8] - 50:16, 50:17, 50:23, 51:13, 58:19, 58:20, 64:19
**evaluated** [1] - 26:2
**evidence** [32] - 8:20, 8:23, 26:6, 26:12, 26:13, 27:6, 32:9, 33:12, 38:18, 38:19, 38:21, 39:5, 39:8, 39:10, 39:13, 41:20,

41:21, 42:1, 42:25, 43:6, 43:7, 44:1, 44:11, 44:13, 44:14, 59:22, 60:25, 61:6, 62:24
**evidentiary** [1] - 57:1
**Ewing** [1] - 4:7
**EWING** [1] - 1:14
**exact** [1] - 63:16
**exactly** [2] - 35:16, 39:1
**examination** [1] - 65:14
**example** [13] - 14:24, 16:15, 23:10, 23:17, 26:5, 29:5, 29:20, 42:15, 42:22, 50:16, 52:19, 59:16, 64:24
**Example** [11] - 22:21, 23:7, 24:13, 25:2, 25:15, 26:2, 29:6, 29:12, 29:13
**examples** [4] - 25:2, 25:11, 26:6, 27:6
**exceedingly** [1] - 6:16
**exception** [1] - 58:17
**exchange** [1] - 46:22
**excuse** [7] - 30:24, 32:2, 37:24, 46:4, 48:15, 51:10, 53:14
**excused** [1] - 50:9
**exhaust** [2] - 7:24, 11:20
**Exhibit** [1] - 55:16
**exhibits** [1] - 46:8
**existed** [1] - 43:1
**expand** [1] - 12:23
**expect** [1] - 19:18
**expectation** [1] - 17:13
**experimental** [2] - 26:9, 26:17
**experimentation** [1] - 27:14
**experiments** [1] - 26:17
**expert** [48] - 6:17, 8:12, 9:5, 9:8, 9:17, 13:5, 13:7, 13:22, 17:6, 17:7, 17:8, 17:11, 17:13, 23:5, 23:6, 23:8, 32:4, 32:8, 32:10, 35:24, 37:6, 40:1, 44:17, 44:21, 46:16, 46:19, 46:21, 46:22, 46:23, 47:3, 47:7, 47:12, 48:11, 48:22, 53:1, 55:2, 55:3, 55:21, 56:9, 56:25, 57:23,

61:2, 62:19, 64:3, 64:6, 65:12
**expert's** [1] - 28:21
**experts** [2] - 17:15, 27:15
**explain** [5] - 15:25, 29:4, 32:22, 48:7, 61:11
**explanation** [2] - 15:24, 18:7
**explicit** [1] - 48:10
**explicitly** [2] - 38:9, 51:12
**expound** [1] - 14:12
**extensive** [2] - 65:19, 66:6
**extent** [10] - 32:17, 34:8, 36:10, 54:20, 56:4, 56:15, 58:18, 64:17, 64:23, 67:9
**extra** [1] - 51:2
**extrinsic** [4] - 41:21, 42:1, 44:11, 44:12

---

**F**

**F.2d** [1] - 43:15
**F.3d** [1] - 41:17
**face** [2] - 19:5, 25:15
**fact** [12] - 13:3, 15:6, 21:4, 21:9, 27:5, 38:18, 44:8, 47:3, 48:13, 51:11, 58:10, 63:15
**factors** [4] - 25:8, 25:9, 25:10
**failed** [1] - 41:8
**fails** [1] - 33:2
**failure** [4] - 15:13, 25:16, 32:2, 65:12
**fair** [1] - 46:8
**faith** [2] - 8:20, 8:24
**fall** [2] - 16:4, 31:1
**falls** [1] - 56:16
**familiar** [3] - 9:3, 10:16, 10:23
**far** [5] - 7:17, 11:22, 17:3, 24:9, 24:16
**Farm** [1] - 2:7
**faster** [1] - 39:25
**February** [3] - 9:6, 9:18, 49:6
**Fed** [1] - 43:15
**Federal** [3] - 41:18, 41:23, 41:25
**few** [1] - 18:1
**figure** [5] - 12:17, 51:4, 51:7, 54:3, 63:25
**figured** [1] - 50:22

**file** [1] - 57:4
**filed** [4] - 6:18, 9:14, 9:19, 10:9
**final** [3] - 7:16, 61:2, 66:24
**fine** [4] - 5:6, 7:7, 62:3, 65:24
**fine-tune** [1] - 7:7, 65:24
**firewall** [1] - 50:5
**Firm** [1] - 5:17
**firm** [6] - 4:14, 5:19, 5:21, 5:23, 16:24, 16:25
**first** [8] - 8:5, 21:4, 28:9, 45:25, 46:1, 47:20, 57:17, 67:6
**fit** [1] - 20:2
**five** [2] - 53:12, 55:25
**Flaster** [1] - 5:21
**FLASTER** [1] - 3:5
**FLAX** [2] - 2:6, 5:2
**Flax** [2] - 5:1, 5:2
**floor** [1] - 35:1
**Florham** [1] - 2:24
**focusing** [1] - 22:3
**follow** [3] - 24:16, 26:4, 29:12
**followed** [3] - 7:9, 21:25, 33:3
**following** [2] - 22:13, 43:9
**follows** [1] - 9:25
**footnote** [2] - 52:21, 53:2
**FOR** [1] - 1:1
**forced** [1] - 54:3
**foregoing** [1] - 68:5
**foresee** [1] - 53:9
**form** [21] - 15:1, 22:22, 24:5, 24:6, 29:13, 32:18, 32:22, 33:1, 33:3, 33:24, 34:9, 34:14, 34:17, 35:3, 35:9, 35:10, 36:7, 36:10, 36:21, 42:6, 43:2
**forms** [18] - 16:3, 21:20, 22:16, 23:1, 24:3, 24:8, 29:8, 33:11, 33:20, 34:2, 34:21, 34:24, 35:16, 35:19, 36:1, 36:21, 39:1
**FORSATZ** [1] - 1:19
**Forsatz** [1] - 4:16
**forth** [9] - 9:8, 21:19, 23:11, 25:17, 31:13, 43:10, 52:14, 57:8, 64:15

**forward** [3] - 45:9, 47:24, 52:12
**foundation** [1] - 12:23
**four** [7] - 23:14, 23:19, 44:24, 47:4, 52:10, 53:14, 55:25
**FOX** [1] - 3:8
**Fox** [1] - 5:24
**frame** [1] - 47:21
**framework** [2] - 43:12, 45:9
**free** [1] - 5:5
**Friedlander** [2] - 1:22, 68:8
**friedlanderreporter @gmail.com** [1] - 1:22
**front** [5] - 8:3, 25:19, 34:5, 39:7, 52:4
**full** [5] - 7:19, 16:9, 27:5, 27:7, 27:13

---

**G**

**gathered** [1] - 26:6
**general** [5] - 7:21, 9:24, 9:25, 10:3, 11:10
**generally** [1] - 45:23
**GILSON** [1] - 2:12
**Gilson** [1] - 5:10
**given** [2] - 28:25, 47:2
**Goldstein** [1] - 5:23
**GOLDSTEIN** [1] - 3:8
**gotcha** [1] - 56:6
**government** [1] - 49:16
**granted** [1] - 47:10
**great** [1] - 50:4
**Greenberg** [1] - 5:21
**GREENBERG** [1] - 3:5
**Greenwich** [1] - 2:21
**grossly** [1] - 59:3
**ground** [1] - 6:13
**grounded** [1] - 11:4
**grounds** [4] - 18:4, 18:7, 18:8, 37:23
**group** [1] - 49:10
**grouped** [1] - 45:10
**guess** [1] - 60:3
**guessing** [1] - 19:25
**guidance** [1] - 67:22
**gymnastics** [2] - 35:6, 35:8

---

**H**

**half** [3] - 9:20, 35:11, 37:13
**Hand** [1] - 5:12

**HAND** [2] - 2:16, 5:11
**handicap** [1] - 6:19
**happy** [5] - 45:18, 49:20, 57:6, 57:8, 57:9
**hard** [1] - 26:19
**heading** [1] - 19:9
**headings** [3] - 19:5, 19:6
**hear** [14] - 7:23, 11:19, 14:2, 14:6, 14:13, 18:24, 22:6, 22:10, 24:22, 31:6, 32:5, 36:25, 57:13, 57:16
**heard** [5] - 19:2, 37:4, 44:10, 54:17, 62:4
**hearing** [9] - 13:4, 17:14, 33:22, 34:16, 36:23, 37:5, 49:21, 67:10, 67:24
**help** [1] - 51:17
**helpful** [5] - 6:12, 12:20, 13:24, 14:14, 48:25
**hemihydrate** [45] - 15:1, 15:2, 16:4, 21:20, 22:16, 22:22, 22:23, 23:1, 23:3, 23:9, 24:4, 24:7, 24:14, 24:17, 25:6, 29:9, 29:14, 29:22, 31:11, 31:18, 31:23, 32:23, 33:3, 33:6, 33:8, 33:21, 33:23, 34:13, 34:15, 34:18, 34:21, 35:5, 35:9, 36:7, 36:21, 37:10, 37:15, 38:25, 42:24, 43:2, 43:9, 58:25, 59:9
**hemihydrates** [2] - 26:11, 36:11
**herein** [1] - 21:18
**Hershy** [1] - 5:18
**HERSHY** [1] - 3:2
**highlight** [2] - 23:24, 46:9
**highlighted** [2] - 46:11, 59:13
**Hilfiker** [8] - 52:20, 52:21, 53:1, 53:5, 53:7, 60:15, 60:20
**Hill** [2] - 3:7, 5:8
**HILL** [1] - 2:9
**himself** [1] - 58:21
**history** [1] - 32:23
**hit** [1] - 11:5
**hold** [7] - 6:21, 8:7, 30:11, 49:13, 51:21, 54:25, 61:23

**holes** [1] - 26:2
**homework** [1] - 7:6
**honest** [1] - 58:22
**Honor** [108] - 4:6, 4:13, 4:17, 4:23, 5:2, 5:7, 5:11, 5:16, 5:20, 5:25, 10:7, 10:11, 10:24, 11:8, 11:13, 12:9, 12:12, 12:15, 12:24, 14:7, 14:20, 14:23, 17:1, 17:8, 17:21, 18:18, 19:1, 20:20, 20:21, 21:1, 21:4, 21:14, 22:8, 22:9, 22:11, 24:2, 24:9, 24:21, 24:24, 25:19, 25:21, 26:18, 26:20, 28:4, 28:7, 28:13, 29:2, 30:3, 30:10, 30:20, 31:3, 31:7, 32:6, 35:7, 37:2, 38:7, 39:7, 39:17, 39:25, 41:14, 41:16, 44:6, 45:1, 45:3, 45:8, 45:18, 46:7, 46:12, 46:20, 47:2, 47:5, 47:14, 47:18, 47:22, 49:16, 49:20, 50:1, 50:10, 50:12, 51:17, 51:19, 51:22, 52:2, 52:6, 52:17, 54:2, 54:12, 54:15, 54:16, 55:23, 56:2, 56:14, 56:19, 56:21, 57:3, 57:6, 57:13, 57:20, 58:22, 61:17, 62:3, 64:6, 66:10, 66:12, 66:19, 66:20, 67:21, 68:1
**Honor's** [1] - 66:21
**HONORABLE** [1] - 1:11
**hoot** [1] - 54:13
**hope** [1] - 67:23
**hopefully** [2] - 4:10, 39:24
**host** [1] - 36:5
**hours** [1] - 62:1
**Hubbard** [1] - 2:3
**hydrate** [5] - 39:11, 40:9, 40:13, 41:12, 59:8
**hydrated** [1] - 42:6
**hydrates** [2] - 25:5, 40:7
**hydrogen** [1] - 58:23
**hypothetical** [1] - 47:9
**hypothetically** [1] - 20:4

**I**

**idea** [2] - 33:19, 37:15
**ideal** [1] - 6:23
**identification** [1] - 62:8
**identified** [8] - 40:14, 42:24, 48:12, 58:21, 60:22, 64:19, 64:20, 64:21
**identify** [7] - 40:18, 43:6, 46:5, 48:5, 48:24, 61:3, 61:19
**identifying** [1] - 61:15
**ignore** [1] - 64:9
**Illinois** [1] - 2:4
**impact** [1] - 38:16
**important** [1] - 28:25
**improper** [3] - 26:21, 62:15, 63:22
**inappropriate** [1] - 47:8
**INC** [1] - 1:7
**include** [2] - 38:2, 42:18
**included** [4] - 15:22, 19:20, 25:2, 58:10
**includes** [2] - 15:11, 37:12
**including** [8] - 18:6, 26:9, 34:2, 43:8, 58:12, 58:16, 61:7
**incorporate** [1] - 21:18
**incorporated** [3] - 15:3, 16:8, 17:23
**incorporating** [1] - 21:23
**indefinite** [11] - 19:7, 31:11, 31:23, 33:16, 34:10, 36:13, 36:24, 37:8, 37:18, 37:21, 38:11
**indefiniteness** [11] - 12:12, 14:4, 15:13, 20:10, 30:17, 30:21, 31:4, 32:4, 32:16, 33:18, 35:4
**indefinites** [2] - 37:9, 37:25
**independent** [4] - 21:24, 22:1, 42:13, 43:25
**independently** [1] - 64:20
**indicate** [1] - 16:2
**indicated** [1] - 21:14
**individual** [1] - 40:18
**indulge** [2] - 12:4,

45:7
**indulgence** [2] - 11:2, 49:17
**inferred** [1] - 15:21
**infinite** [2] - 63:19, 64:1
**inform** [1] - 33:2
**information** [1] - 49:11
**informed** [1] - 67:7
**inherency** [2] - 44:1, 44:2
**inherent** [2] - 43:11, 44:7
**inherently** [2] - 42:8, 42:12
**initial** [1] - 10:9
**inside** [1] - 43:20
**instead** [5] - 18:14, 24:12, 27:25, 31:24, 35:6
**instructions** [3] - 22:14, 24:16, 29:13
**instructive** [1] - 41:15
**intend** [1] - 62:10
**intent** [2] - 16:20, 35:4
**internal** [8] - 40:7, 40:10, 40:13, 40:20, 41:12, 48:14, 48:20, 61:7
**interpreting** [1] - 57:23
**intimate** [1] - 40:25
**introduce** [1] - 4:11
**invalid** [4] - 15:12, 16:17, 38:10, 40:4
**invalidate** [3] - 21:8, 21:11, 28:1
**invalidity** [23] - 9:8, 9:12, 10:3, 11:24, 12:5, 15:8, 16:12, 17:10, 18:4, 21:19, 23:11, 29:4, 35:21, 37:25, 40:16, 40:23, 44:16, 47:3, 47:7, 50:14, 56:13, 59:4, 59:5
**Invalidity** [1] - 19:10
**invention** [1] - 32:24
**involve** [2] - 55:22, 56:10
**involved** [1] - 65:16
**involves** [1] - 6:16
**iPad** [1] - 51:25
**irrespective** [1] - 21:8
**isolation** [1] - 42:17
**issue** [29] - 6:16, 7:8, 9:18, 11:15, 11:22, 11:23, 12:2, 12:3, 14:2, 17:3, 17:15,

17:22, 29:24, 33:18, 36:19, 37:10, 37:14, 37:17, 38:8, 38:15, 41:16, 44:23, 56:7, 57:1, 57:8, 57:10, 60:7, 66:5, 66:20
**issued** [2] - 17:12, 25:13
**issues** [18] - 6:11, 7:2, 8:1, 9:3, 10:11, 10:13, 10:22, 17:10, 17:12, 29:1, 36:5, 46:25, 47:22, 60:4, 64:24, 66:7, 67:16, 67:19
**item** [1] - 48:5
**itself** [2] - 40:12, 43:8

**J**

**JAMES** [67] - 1:17, 2:13, 2:20, 3:12, 4:13, 11:13, 12:9, 12:15, 12:22, 14:7, 14:10, 19:1, 20:12, 22:8, 22:11, 24:2, 24:11, 24:21, 28:4, 28:7, 28:13, 29:2, 30:3, 30:10, 30:16, 30:20, 30:23, 31:3, 31:7, 37:2, 39:17, 39:20, 39:24, 44:6, 45:1, 45:7, 45:13, 45:18, 46:1, 46:7, 46:12, 46:17, 46:20, 47:2, 47:14, 47:18, 47:20, 48:4, 50:10, 50:12, 51:22, 51:24, 52:2, 52:6, 52:19, 53:19, 53:23, 54:1, 54:12, 54:15, 56:21, 57:3, 57:6, 57:13, 62:6, 63:7, 66:9
**James** [14] - 4:14, 5:9, 5:14, 5:25, 10:12, 10:14, 11:13, 12:4, 19:2, 22:6, 28:4, 37:3, 44:7, 66:9
**Janssen** [15] - 40:7, 40:10, 40:13, 40:19, 40:22, 41:1, 41:2, 41:12, 42:11, 43:8, 43:23, 44:10, 48:14, 49:9, 50:13
**January** [1] - 25:23
**JEFFREY** [1] - 3:6
**Jeffrey** [7] - 5:21, 51:9, 51:11, 51:13, 58:18, 58:20, 64:19
**JERSEY** [1] - 1:1
**Jersey** [4] - 4:7, 10:8,

*39:3, 61:4*
**job** [2] - 48:23
**JOEL** [1] - 1:11
**John** [1] - 49:15
**joined** [2] - 4:25, 5:9
**Joint** [2] - 48:2, 48:3
**joint** [44] - 9:11, 13:8,
13:10, 13:18, 14:16,
14:21, 19:8, 22:11,
22:13, 23:23, 29:11,
30:6, 31:7, 31:9,
33:15, 37:7, 37:16,
37:19, 40:8, 40:11,
40:14, 46:2, 46:3,
48:12, 50:16, 50:17,
51:10, 52:10, 52:21,
53:2, 53:8, 53:13,
53:16, 53:20, 54:4,
55:14, 55:15, 55:19,
56:8, 56:12, 56:23,
57:18, 62:11, 63:9
**jointly** [1] - 17:12
**Jones** [2] - 35:22,
35:23
**JOSEPH** [1] - 3:9
**Joseph** [1] - 5:23
**JOSHUA** [1] - 2:13
**Joshua** [1] - 5:9
**JOVIAL** [1] - 3:15
**Jovial** [1] - 6:2
**JUDGE** [1] - 1:12
**Judge** [6] - 31:15,
66:24, 67:8, 67:17,
67:18
**judgment** [2] - 20:6,
21:7
**jump** [2] - 7:3, 16:12
**June** [4] - 7:16, 7:17,
9:13, 9:21

## K

**Karen** [2] - 1:22, 68:8
**KASOWITZ** [1] - 3:2
**Kasowitz** [1] - 5:19
**keep** [1] - 47:17
**KELLY** [2] - 2:23, 5:16
**Kelly** [1] - 5:17
**KESSLER** [1] - 3:8
**Kessler** [1] - 5:23
**KIM** [1] - 3:9
**Kim** [1] - 5:23
**kind** [3] - 43:12, 54:2,
58:4
**knowledge** [11] -
45:15, 63:9, 63:15,
63:18, 63:21, 63:24,
64:1, 64:9, 64:12,
65:10
**Knowledge** [1] - 63:7

**known** [5] - 23:14,
23:21, 42:16, 42:18,
44:21
**knows** [1] - 64:15
**KSR** [1] - 64:11

## L

**label** [1] - 44:13
**laboratory** [1] - 26:3
**Labs** [4] - 3:7, 3:10,
5:22, 43:15
**lack** [2] - 16:18, 66:13
**lacks** [1] - 16:1
**language** [8] - 14:25,
15:21, 17:20, 22:3,
27:23, 63:9, 63:11,
63:15
**last** [6] - 11:24, 18:1,
25:19, 30:13, 44:5,
44:22
**late** [3] - 28:19, 30:2,
41:2
**Laughter** [1] - 39:23
**Laurus** [3] - 3:7, 3:10,
5:22
**Law** [1] - 5:17
**law** [4] - 5:21, 5:23,
44:7, 44:8
**lay** [1] - 12:23
**leachable** [1] - 43:17
**lead** [1] - 4:20
**learn** [1] - 13:7
**least** [3] - 10:6, 11:6,
11:10
**leave** [1] - 63:25
**leaves** [1] - 63:17
**leeway** [1] - 36:10
**legitimate** [1] - 18:12
**Lehr** [1] - 4:7
**LEHR** [1] - 1:14
**lengthy** [2] - 6:17,
7:12
**less** [2] - 45:2, 45:4
**letter** [6] - 10:9, 40:25,
52:7, 61:18, 67:18,
67:20
**light** [1] - 40:6
**likewise** [6] - 15:2,
16:13, 17:12, 39:8,
60:13
**limine** [2] - 8:8, 57:5
**limit** [1] - 16:20
**limitation** [1] - 42:8
**limited** [2] - 33:23,
34:17
**line** [3] - 4:15, 5:13,
6:2
**LIONE** [1] - 2:12
**list** [5] - 4:9, 55:3,

*55:13, 56:23, 63:23*
**listed** [2] - 53:18,
56:22
**litigation** [4] - 41:9,
44:19, 48:18, 49:2
**living** [1] - 12:21
**LLC** [3] - 2:22, 3:11,
41:16
**LLP** [6] - 1:14, 1:17,
2:9, 2:19, 3:2, 3:14
**loading** [2] - 52:3,
52:4
**local** [32] - 5:1, 5:12,
5:17, 5:22, 8:13,
8:19, 9:9, 10:11,
10:16, 10:17, 11:4,
17:20, 18:3, 20:2,
29:3, 37:22, 38:5,
39:3, 40:17, 40:21,
43:5, 44:12, 48:4,
48:9, 51:5, 59:3,
60:25, 61:1, 61:4,
62:7, 62:19, 65:15
**location** [1] - 61:4
**look** [14] - 12:9, 14:18,
15:6, 18:17, 18:18,
30:23, 32:15, 37:19,
51:3, 54:3, 58:6,
58:13, 59:16, 61:9
**looked** [1] - 12:23
**looking** [5] - 18:13,
25:20, 35:22, 53:17,
62:20
**lose** [1] - 21:3
**Lupin** [4] - 2:5, 2:8,
4:25, 5:3
**LYNN** [1] - 3:15
**Lynn** [1] - 6:2

## M

**Madison** [1] - 1:19
**MAGISTRATE** [1] -
1:12
**mail** [1] - 49:22
**main** [1] - 11:14
**manifest** [1] - 36:1
**MARC** [1] - 2:16
**Marc** [1] - 5:13
**March** [12] - 6:9, 9:12,
9:14, 9:19, 10:9,
10:10, 51:24, 55:16,
55:20, 56:8, 56:15,
56:17
**Mark** [2] - 5:9, 54:16
**MARK** [1] - 2:12
**Markman** [15] - 13:4,
31:25, 32:10, 32:11,
32:12, 33:13, 33:22,
34:16, 35:24, 36:8,

*36:13, 36:23, 37:4,
37:6, 37:22*
**Martinsville** [1] - 3:12
**material** [4] - 8:2,
24:7, 43:17, 59:20
**materials** [2] - 56:22,
57:25
**Matt** [1] - 5:1
**matter** [3] - 4:2, 66:3,
68:6
**matters** [1] - 66:8
**MATTES** [1] - 1:18
**Mattes** [1] - 4:16
**MATTHEW** [1] - 2:3
**Mazzochi** [15] - 4:24,
11:16, 16:23, 17:8,
18:18, 20:20, 21:1,
24:25, 29:5, 35:7,
38:7, 41:15, 44:10,
57:21
**MAZZOCHI** [33] - 2:2,
2:2, 4:23, 4:25,
11:16, 14:20, 15:23,
17:1, 17:7, 17:21,
18:17, 20:20, 21:1,
24:24, 27:2, 27:22,
28:2, 32:6, 33:17,
34:6, 34:11, 34:14,
35:7, 36:15, 36:18,
38:7, 41:14, 57:20,
61:25, 62:3, 62:17,
64:8, 66:11
**mean** [10] - 10:20,
20:5, 21:5, 21:10,
36:19, 45:5, 47:16,
54:8, 56:1, 65:11
**meaning** [1] - 31:19
**means** [3] - 19:22,
29:17, 39:13
**meant** [2] - 18:19,
46:14
**mechanical** [1] - 1:24
**meet** [1] - 8:14
**meet-and-confer** [1] -
8:14
**Melissa** [2] - 5:1, 5:2
**MELISSA** [1] - 2:6
**mention** [1] - 17:19
**mentioned** [2] - 14:16,
15:20, 19:23
**merit** [2] - 28:16,
28:24
**metes** [1] - 32:24
**method** [1] - 59:18
**methods** [2] - 42:16,
42:18
**Midlige** [1] - 6:1
**MIDLIGE** [1] - 3:11
**might** [6] - 23:20,
26:15, 29:25, 47:5,

*51:19, 67:10*
**million** [1] - 48:17
**mind** [1] - 10:15
**mine** [1] - 55:13
**minute** [1] - 45:8
**minutes** [1] - 61:24
**misreading** [1] - 59:3
**Mitsubishi** [1] - 4:2
**MITSUBISHI** [1] - 1:3
**mL** [4] - 35:11, 35:12,
37:13
**MOLINO** [1] - 2:2
**Molz** [2] - 49:21, 49:24
**MOLZ** [2] - 49:23, 50:1
**moment** [3] - 30:11,
51:21, 67:11
**Monsanto** [5] - 41:16,
41:24, 41:25, 43:12,
43:14
**month** [1] - 9:20
**month-and-a-half** [1] -
9:20
**MOORE** [1] - 2:19
**Moore** [1] - 5:14
**moreover** [1] - 27:7
**most** [5] - 6:15, 11:22,
30:14, 33:13, 51:23
**motion** [3] - 8:7,
25:18, 57:4
**motions** [1] - 66:17
**move** [15] - 7:25,
11:20, 18:25, 20:24,
22:5, 32:1, 36:17,
37:1, 39:15, 56:20,
57:9, 57:12, 57:14,
61:23, 62:2
**moved** [2] - 31:21,
55:5
**moving** [4] - 7:24,
11:20, 30:20, 52:12
**MR** [23] - 4:6, 5:7,
5:16, 5:20, 5:25,
10:7, 10:24, 11:8,
49:15, 49:20, 49:23,
50:1, 54:16, 54:19,
55:7, 55:17, 55:23,
56:2, 56:4, 56:11,
56:19, 66:19, 67:21
**MS** [95] - 4:13, 4:23,
5:2, 5:11, 11:13,
11:16, 12:9, 12:15,
12:22, 14:7, 14:10,
14:20, 15:23, 17:1,
17:7, 17:21, 18:17,
19:1, 20:12, 20:20,
21:1, 22:8, 22:11,
24:2, 24:11, 24:21,
24:24, 27:2, 27:22,
28:2, 28:4, 28:7,
28:13, 29:2, 30:3,

*30:10, 30:16, 30:20, 30:23, 31:3, 31:7, 32:6, 33:17, 34:6, 34:11, 34:14, 35:7, 36:15, 36:18, 37:2, 38:7, 39:17, 39:20, 39:24, 41:14, 44:6, 45:1, 45:7, 45:13, 45:18, 46:1, 46:7, 46:12, 46:17, 46:20, 47:2, 47:14, 47:18, 47:20, 48:4, 50:10, 50:12, 51:22, 51:24, 52:2, 52:6, 52:19, 53:19, 53:23, 54:1, 54:12, 54:15, 56:21, 57:3, 57:6, 57:13, 57:20, 61:25, 62:3, 62:6, 62:17, 63:7, 64:8, 66:9, 66:11*
*MSN* [3] - 3:13, 3:17, 6:1
*multiple* [8] - 17:14, 17:15, 33:10, 33:20, 34:1, 34:24, 39:1, 60:23
*must* [1] - 48:15

## N

*name* [2] - 4:22, 6:6
*necessarily* [3] - 38:21, 42:2, 43:3
*need* [11] - 8:15, 14:12, 28:21, 30:23, 40:23, 44:16, 47:18, 48:5, 60:8, 66:8, 67:13
*needs* [1] - 29:3
*neglected* [1] - 46:14
*NEILON* [1] - 2:20
*Neilon* [1] - 5:14
*Nemours* [1] - 41:17
*never* [12] - 13:8, 15:16, 29:10, 45:10, 46:2, 46:3, 48:12, 53:13, 53:15, 53:20, 53:23, 64:5
*New* [9] - 1:20, 3:4, 3:9, 4:7, 10:7, 39:3, 52:19, 61:4, 62:7
*new* [31] - 9:8, 9:9, 13:7, 22:3, 22:18, 23:5, 23:18, 23:22, 25:24, 26:8, 27:10, 32:4, 38:21, 38:22, 42:25, 45:5, 45:6, 48:12, 53:12, 53:15, 53:21, 59:21, 60:18, 60:19, 60:20, 61:20, 62:14

*NEW* [1] - 1:1
*Newark* [1] - 1:15
*newly* [1] - 48:13
*next* [6] - 11:21, 30:20, 50:7, 57:10, 57:15, 66:2
*NIMROD* [1] - 1:18
*Nimrod* [1] - 4:16
*nine* [1] - 52:8
*NJ* [7] - 1:15, 2:7, 2:10, 2:17, 2:24, 3:7, 3:13
*non* [1] - 26:14
*non-enablement* [1] - 26:14
*none* [1] - 58:19
*note* [5] - 16:7, 20:21, 21:13, 30:12, 56:21
*notebooks* [1] - 26:3
*noted* [2] - 9:17, 15:8
*notes* [1] - 55:13
*nothing* [2] - 6:23, 50:8
*notice* [2] - 15:16, 39:14
*noting* [1] - 33:12
*notwithstanding* [1] - 25:23
*November* [1] - 9:16
*nowhere* [5] - 23:22, 31:7, 31:9, 31:20, 37:16
*nuance* [1] - 23:25
*nuanced* [2] - 22:24, 29:15
*NUMBER* [1] - 1:3
*number* [2] - 63:19, 64:1
*NW* [2] - 3:9, 3:16
*NY* [2] - 1:20, 3:4

## O

*o'clock* [2] - 49:18, 57:12
*obfuscated* [1] - 32:25
*object* [3] - 30:1, 56:5
*objecting* [3] - 58:7, 59:11, 59:13
*objection* [2] - 8:8, 10:21
*objections* [1] - 9:25
*observe* [1] - 66:21
*obvious* [3] - 48:7, 48:8, 63:14
*obviously* [2] - 10:25, 67:10
*obviousness* [13] - 9:25, 11:11, 11:23, 44:23, 45:22, 47:25,

*50:19, 51:8, 51:15, 62:12, 63:16, 64:10, 64:13*
*OF* [1] - 1:1
*offer* [2] - 21:6, 60:1
*offered* [2] - 8:13, 59:5
*office* [2] - 7:10, 49:22
*Official* [1] - 1:22
*OLSTEIN* [1] - 2:6
*One* [1] - 1:15
*one* [47] - 7:23, 7:24, 8:2, 10:8, 11:19, 13:9, 14:22, 16:6, 16:7, 17:11, 17:12, 20:21, 22:18, 22:25, 24:6, 25:9, 25:10, 25:19, 27:8, 27:11, 29:7, 29:21, 30:11, 31:1, 32:18, 33:21, 33:22, 33:23, 34:17, 34:18, 34:23, 35:12, 37:13, 39:20, 43:14, 45:2, 49:13, 51:21, 53:4, 54:2, 54:25, 58:17, 59:17, 59:20, 65:3, 65:6, 65:23*
*open* [1] - 63:17
*opening* [2] - 59:25, 60:4
*opine* [1] - 60:8
*opinion* [6] - 7:8, 7:12, 31:25, 32:10, 56:25, 65:25
*opinions* [5] - 10:17, 21:6, 27:15, 47:7, 62:15
*opportunities* [1] - 49:5
*opportunity* [3] - 23:16, 34:1, 44:19
*opposed* [1] - 22:4
*opposite* [2] - 36:8, 63:16
*opposition* [2] - 50:21, 51:18
*option* [1] - 63:17
*ORAL* [1] - 1:5
*oral* [10] - 4:21, 6:8, 6:11, 6:14, 7:3, 7:6, 7:8, 65:20, 65:25, 66:4
*order* [6] - 7:8, 31:16, 37:22, 61:2, 66:1, 66:7
*ordered* [3] - 25:21, 26:18, 28:10
*ordinarily* [1] - 6:20, 7:1
*ordinary* [13] - 22:15, 22:25, 23:2, 26:10,

*27:14, 27:19, 29:8, 29:21, 42:23, 64:9, 64:12, 64:14, 65:11*
*organics* [1] - 59:20
*original* [3] - 26:24, 27:23, 39:2
*outset* [1] - 6:24
*outside* [2] - 43:19, 43:21
*own* [11] - 23:16, 27:5, 33:12, 35:24, 54:23, 59:22, 59:23, 61:7, 61:8, 65:1, 65:7

## P

*P.C* [1] - 2:6
*p.m* [2] - 1:10, 68:2
*page* [6] - 9:23, 32:19, 33:14, 45:9, 46:10, 56:10
*Page* [22] - 14:21, 15:6, 15:25, 16:16, 18:14, 18:21, 19:5, 19:9, 20:13, 20:17, 21:18, 31:5, 32:20, 38:9, 41:17, 42:7, 42:15, 51:18, 52:7, 52:15, 57:7
*Pages* [5] - 33:17, 34:5, 42:5, 61:18, 61:20
*pages* [3] - 48:17, 52:25, 53:3
*paper* [1] - 64:16
*papers* [1] - 44:24
*paragraph* [5] - 30:22, 46:5, 46:10, 55:25, 58:7
*Paragraph* [6] - 20:6, 20:18, 35:23, 59:17, 60:13, 60:16
*Paragraphs* [7] - 10:1, 10:2, 10:4, 12:7, 20:22, 22:7, 45:23
*paragraphs* [5] - 20:7, 20:11, 30:18, 32:7, 46:6
*Park* [1] - 2:24
*part* [11] - 20:15, 21:11, 25:18, 33:13, 47:10, 51:15, 53:2, 53:9, 61:10, 64:10
*participants* [1] - 4:9
*particular* [11] - 16:6, 20:7, 24:4, 32:6, 32:7, 33:9, 34:17, 36:13, 38:15, 43:7, 43:16
*particularly* [2] -

*19:25, 61:6*
*parties* [11] - 4:8, 4:10, 6:10, 9:22, 14:25, 41:20, 46:20, 46:21, 67:5, 67:7, 67:10
*parties'* [1] - 8:14
*parts* [2] - 53:5, 53:10
*party* [4] - 7:24, 11:20, 29:3, 54:19
*Patent* [27] - 13:11, 13:14, 13:21, 14:24, 15:15, 16:17, 16:21, 16:22, 17:23, 18:14, 18:15, 18:23, 19:7, 19:10, 21:21, 24:3, 32:9, 32:21, 37:21, 38:10, 40:6, 42:5, 42:9, 43:1, 43:10, 43:11
*patent* [27] - 8:13, 10:11, 10:16, 10:17, 10:18, 11:4, 17:20, 22:25, 23:1, 23:8, 24:7, 24:17, 25:2, 25:3, 25:4, 26:5, 27:6, 28:1, 37:18, 38:5, 39:3, 40:4, 40:21, 43:19, 61:1, 61:4
*patents* [2] - 22:14, 40:19
*patents-in-suit* [1] - 22:14
*pathway* [1] - 39:6
*pause* [1] - 52:16
*PC* [1] - 3:5
*people* [2] - 6:5, 50:7
*per* [1] - 60:21
*perceive* [1] - 12:1
*perfect* [2] - 12:14, 23:10, 27:6
*perfectly* [3] - 26:13, 27:17, 58:22
*perhaps* [1] - 23:20
*person* [6] - 6:21, 22:15, 23:2, 26:10, 27:13, 27:19, 42:22, 64:9, 64:12, 64:14, 65:11
*perspective* [2] - 36:18, 52:22
*pertain* [1] - 20:7
*pertaining* [1] - 15:5
*PGA* [1] - 34:19
*PHARMA* [2] - 1:3, 1:7
*phase* [1] - 46:21
*phone* [5] - 4:20, 5:22, 6:5, 6:22, 67:2
*phrase* [5] - 18:19, 33:1, 34:8, 36:20,

38:11
*piece* [7] - 12:17, 39:5, 43:6, 51:4, 61:5, 61:6, 64:15
*pieces* [2] - 19:21, 43:7
*pill* [1] - 26:19
*pinch* [1] - 11:5
*place* [3] - 7:15, 47:20, 66:22
*plaintiff* [32] - 4:8, 4:14, 8:17, 8:21, 9:13, 9:16, 10:1, 14:15, 15:9, 17:4, 17:24, 18:25, 20:5, 25:12, 25:14, 25:22, 28:15, 28:18, 32:7, 35:1, 38:17, 39:16, 44:5, 47:11, 51:6, 55:5, 56:20, 60:24, 62:5, 62:18, 63:6
*Plaintiff* [3] - 1:16, 1:20, 44:25
*plaintiffs* [54] - 7:23, 10:8, 11:14, 11:19, 13:16, 15:11, 15:16, 16:4, 19:4, 21:4, 21:8, 21:9, 25:1, 26:1, 26:15, 27:3, 31:13, 31:18, 32:13, 32:14, 33:6, 33:25, 34:8, 34:20, 36:6, 36:20, 37:24, 38:8, 38:24, 39:8, 39:12, 41:2, 41:24, 42:20, 48:17, 52:11, 57:23, 58:6, 58:10, 58:13, 59:3, 59:17, 59:21, 60:5, 60:9, 60:15, 61:3, 63:25, 64:8, 64:23, 65:6, 65:9, 66:10, 66:16
*Plaintiffs* [1] - 1:5
*plaintiffs'* [27] - 4:4, 6:8, 8:6, 8:11, 9:4, 9:7, 9:19, 21:14, 25:20, 26:23, 32:9, 32:12, 33:12, 33:19, 35:21, 37:1, 37:6, 37:11, 44:2, 46:16, 46:23, 47:10, 57:22, 59:19, 60:14, 62:20, 62:21
*plan* [2] - 39:5, 64:21
*planning* [5] - 10:10, 48:21, 48:24, 61:16
*plastic* [1] - 43:17
*Plaza* [2] - 1:15, 2:13
*point* [17] - 7:25, 8:5, 8:10, 8:15, 8:16,

8:21, 14:18, 29:11, 33:5, 35:9, 54:18, 56:22, 59:2, 60:9, 62:4, 63:6
*pointed* [1] - 63:20
*pointing* [7] - 38:23, 48:8, 58:1, 58:2, 58:7, 60:19, 60:21
*points* [6] - 8:3, 8:25, 21:2, 35:17, 58:2, 62:20
*polymorph* [2] - 59:8, 67:5
*polymorphic* [2] - 33:20, 42:6
*polymorphs* [2] - 61:13, 61:14
*poor* [1] - 26:15
*portion* [1] - 46:11
*portions* [8] - 9:4, 9:7, 47:11, 47:12, 54:21, 55:1, 55:20, 56:9
*POSA* [9] - 45:15, 63:8, 63:9, 63:15, 63:19, 63:21, 63:22, 63:24, 64:2
*position* [6] - 16:11, 27:3, 28:21, 36:12, 41:24, 50:25
*positions* [2] - 27:16, 37:6
*possible* [2] - 12:18, 23:12
*possibly* [1] - 64:2
*postponed* [1] - 7:19
*potential* [1] - 29:8
*potentially* [1] - 37:23
*practice* [1] - 22:21
*preassembled* [1] - 60:25
*precisely* [2] - 19:3
*precluded* [2] - 62:19, 63:3
*predecessor* [1] - 16:25
*predictability* [1] - 25:9
*preference* [1] - 47:15
*prefers* [1] - 45:19
*prejudicial* [1] - 54:22
*premise* [1] - 12:24
*prepare* [1] - 16:24
*prepared* [1] - 17:24
*preparing* [2] - 58:21, 64:20
*presence* [1] - 25:11
*present* [3] - 7:15, 42:3, 43:3
*pretrial* [3] - 7:16, 61:2, 66:25

*pretty* [2] - 48:9, 57:8
*Previously* [1] - 62:6
*previously* [2] - 45:13, 67:4
*Princeton* [2] - 2:10, 5:8
*principle* [1] - 58:23
*privilege* [1] - 25:24
*problem* [7] - 11:7, 12:14, 19:3, 28:18, 39:11, 50:5, 54:1
*proceed* [1] - 7:20
*proceeded* [1] - 13:3
*proceeding* [1] - 6:19
*Proceedings* [1] - 1:24
*proceedings* [5] - 32:11, 32:12, 33:13, 36:8, 68:6
*process* [1] - 22:21
*produce* [5] - 25:22, 26:18, 28:10, 28:15, 28:23
*produced* [8] - 1:24, 25:22, 26:19, 41:2, 41:3, 44:15, 46:16, 48:17
*production* [2] - 48:21, 48:24
*promise* [1] - 27:8
*promptly* [1] - 66:5
*propose* [1] - 66:18
*proposed* [1] - 37:11
*prosecution* [1] - 32:23
*prove* [2] - 44:9, 60:9
*provide* [2] - 32:3, 63:12
*publication* [1] - 64:17
*published* [1] - 64:16
*pull* [2] - 51:21, 52:7
*purification* [2] - 42:17, 59:18
*purported* [1] - 31:14
*Purpose* [1] - 62:7
*purpose* [2] - 43:24, 45:14
*purposes* [1] - 40:21
*pursued* [1] - 59:17
*put* [17] - 8:21, 14:11, 15:16, 19:21, 23:11, 31:13, 36:19, 38:12, 38:18, 45:1, 47:20, 51:1, 51:18, 53:8, 58:9, 58:11, 63:21
*Putnam* [1] - 2:20
*putting* [1] - 34:22

## Q

*qualities* [1] - 43:18
*queries* [1] - 10:13
*questioning* [1] - 49:4
*questions* [7] - 7:7, 11:3, 32:11, 57:7, 57:9, 65:25, 67:16
*quick* [2] - 62:5, 62:6
*QUINN* [1] - 1:17
*Quinn* [3] - 4:14, 4:15, 10:12
*quote* [4] - 34:8, 34:9, 42:2

## R

*radar* [1] - 18:2
*raise* [5] - 8:15, 8:18, 18:4, 21:2, 28:19
*raised* [5] - 19:9, 28:19, 36:19, 38:8, 60:4
*raising* [1] - 64:23
*RAKOCZY* [1] - 2:2
*range* [4] - 34:21, 35:15, 35:19, 36:10
*rather* [1] - 10:22
*ratio* [3] - 33:9, 33:10, 35:25
*rationale* [4] - 16:1, 18:10, 35:14
*Ray* [1] - 4:16
*ray* [1] - 16:7
*RAYMOND* [1] - 1:18
*Re* [1] - 43:14
*reach* [1] - 58:1
*read* [8] - 6:10, 7:12, 10:17, 18:3, 29:18, 32:7, 39:3, 65:25
*reading* [4] - 19:4, 19:11, 44:24, 59:12
*real* [2] - 62:5, 62:6
*really* [5] - 12:22, 14:25, 19:21, 26:19, 58:6
*reason* [1] - 41:4
*reasonable* [4] - 19:17, 30:5, 33:4, 33:5
*reasonably* [1] - 29:17
*REBECCA* [1] - 2:16
*Rebecca* [1] - 5:12
*rebut* [1] - 61:8
*rebuttal* [1] - 63:4
*received* [3] - 13:6, 22:17, 23:13
*recent* [1] - 51:23
*recipe* [4] - 24:13, 25:6, 27:18, 42:22

*recite* [1] - 39:5
*reciting* [1] - 39:13
*recognized* [1] - 64:14
*reconvene* [1] - 65:24
*record* [9] - 4:1, 4:2, 7:1, 7:8, 7:13, 37:3, 65:19, 65:25, 68:6
*recorded* [1] - 1:24
*recrystallization* [1] - 42:18
*reference* [33] - 17:23, 21:18, 21:23, 42:13, 43:20, 43:22, 48:1, 50:16, 50:18, 50:20, 50:21, 50:23, 50:24, 51:3, 51:4, 58:3, 59:21, 59:22, 60:15, 60:19, 60:20, 62:9, 62:21, 62:22, 63:13, 63:18, 64:18, 64:24, 65:1
*referenced* [1] - 58:20
*references* [42] - 9:9, 40:6, 40:9, 40:13, 40:18, 41:12, 42:11, 44:20, 45:5, 45:11, 45:14, 46:1, 48:1, 48:9, 48:12, 48:14, 49:8, 49:10, 49:12, 50:15, 51:12, 51:13, 52:15, 57:17, 58:3, 58:8, 58:18, 58:20, 59:7, 60:23, 61:10, 61:11, 61:16, 62:12, 62:14, 63:13, 63:19, 63:24, 64:1, 64:5, 64:21, 65:3
*referencing* [1] - 60:17
*referred* [2] - 36:4, 40:5
*referring* [2] - 33:15, 35:18
*refuse* [1] - 26:1
*regard* [2] - 33:21, 35:3
*regarding* [4] - 26:6, 33:22, 67:16, 67:19
*reiterated* [1] - 21:23
*rejected* [1] - 8:9
*rejects* [1] - 20:10
*related* [2] - 20:22, 66:23
*relevant* [5] - 13:18, 20:16, 54:18, 54:24, 61:12
*relied* [4] - 23:7, 43:24, 56:15, 58:3
*relies* [3] - 23:7, 29:20, 40:9
*rely* [16] - 13:1, 19:17,

*39:5, 44:9, 44:17,*
*48:22, 49:1, 51:14,*
*53:10, 55:20, 56:1,*
*56:8, 62:10, 63:4,*
*64:12, 64:22*
**relying** [1] - 13:5,
*38:20, 39:8, 40:22,*
*41:3, 43:8, 48:25,*
*52:12, 54:5, 55:25,*
*61:10, 64:3, 64:18,*
*65:4, 65:5*
**remain** [2] - 7:15,
*66:22*
**remember** [1] - 30:13
**remotely** [1] - 7:11
**remove** [1] - 47:11
**removed** [2] - 13:21,
*47:23*
**REMUS** [10] - 2:12,
*54:16, 54:19, 55:7,*
*55:17, 55:23, 56:2,*
*56:4, 56:11, 56:19*
**Remus** [2] - 5:9, 54:16
**rendering** [1] - 56:25
**renders** [3] - 48:6,
*48:8, 63:14*
**renew** [1] - 47:4
**repeated** [1] - 31:8
**repeatedly** [1] - 51:1
**repeating** [1] - 22:4
**replaced** [1] - 22:20
**reply** [9] - 10:9, 14:8,
*18:24, 28:5, 37:1,*
*46:22, 51:17, 57:7,*
*60:2*
**report** [34] - 9:5, 10:2,
*10:4, 13:7, 13:22,*
*17:11, 17:13, 20:12,*
*20:15, 22:17, 23:5,*
*23:13, 24:12, 29:19,*
*30:24, 31:4, 32:4,*
*32:8, 38:4, 40:1,*
*40:2, 46:5, 46:9,*
*46:21, 52:9, 53:1,*
*57:7, 57:23, 58:22,*
*59:25, 60:2, 60:5,*
*62:13, 64:6*
**reporter** [2] - 6:7,
*67:25*
**Reporter** [1] - 1:22
**Reporter/**
**Transcriber** [1] -
*68:8*
**reports** [26] - 6:17,
*8:13, 9:8, 9:18, 17:6,*
*17:7, 17:8, 46:16,*
*46:18, 46:22, 46:24,*
*47:3, 47:13, 48:22,*
*51:2, 54:20, 54:21,*
*55:2, 55:4, 55:8,*

*55:21, 56:9, 61:3,*
*64:3, 64:20*
**represent** [1] - 5:8
**reproduce** [1] - 23:6
**requests** [1] - 25:13
**require** [3] - 23:10,
*40:17, 43:5*
**required** [3] - 38:1,
*49:2, 59:4, 65:15*
**requirement** [3] -
*13:12, 13:14, 48:15*
**requirements** [1] -
*15:14*
**requires** [1] - 29:7
**reserve** [2] - 6:25,
*14:7*
**reserving** [2] - 20:4,
*65:21*
**respect** [4] - 10:13,
*13:13, 51:1, 67:3*
**respectfully** [1] - 20:1
**respond** [10] - 23:19,
*23:20, 28:17, 47:4,*
*47:6, 47:12, 47:21,*
*60:5, 62:25, 65:3*
**responded** [3] - 9:13,
*9:16, 46:17*
**responding** [3] -
*35:21, 60:14, 62:19*
**response** [4] - 48:18,
*59:25, 60:1, 60:11*
**RESPONSE** [1] - 68:1
**responsive** [1] - 61:17
**result** [2] - 34:19,
*63:17*
**results** [1] - 26:17
**rewrite** [1] - 41:10
**Richter** [2] - 6:1
**RICHTER** [3] - 3:11,
*3:12, 5:25*
**Ridge** [1] - 3:13
**ripe** [1] - 8:6
**rise** [1] - 31:1
**rises** [1] - 56:16
**Riverfront** [1] - 1:15
**RMR** [1] - 68:8
**Road** [3] - 2:7, 2:10,
*3:12*
**Roseland** [1] - 2:7
**Roszel** [1] - 2:10
**round** [1] - 66:16
**Route** [1] - 2:17
**rule** [11] - 7:1, 10:11,
*47:22, 48:4, 51:5,*
*55:19, 61:1, 61:8,*
*61:9, 66:3*
**Rule** [2] - 10:18, 10:19
**Rules** [1] - 9:10
**rules** [2] - 6:14, 8:5,
*8:13, 8:19, 10:16,*

*10:17, 10:18, 11:5,*
*17:20, 18:3, 20:2,*
*23:10, 29:3, 37:22,*
*38:5, 39:3, 40:17,*
*40:21, 43:5, 44:12,*
*48:9, 56:2, 59:3,*
*62:7, 62:19, 65:15*
**ruling** [4] - 8:7, 20:3,
*47:9, 56:16*

## S

**safe** [1] - 67:24
**safer** [1] - 47:6
**SAIBER** [1] - 2:22
**Saiber** [1] - 5:17
**sails** [1] - 10:20
**salient** [1] - 58:2
**samples** [1] - 25:21
**sandbagging** [2] -
*8:20, 64:5*
**Sanders** [1] - 10:18
**Sandoz** [25] - 2:11,
*2:14, 5:9, 5:10, 9:15,*
*13:9, 16:12, 16:15,*
*17:9, 53:24, 54:6,*
*54:9, 54:14, 54:17,*
*54:19, 54:22, 54:23,*
*55:6, 55:9, 55:22,*
*56:1, 56:10, 56:12,*
*56:23*
**Sandoz's** [7] - 9:13,
*9:16, 16:12, 17:3,*
*17:5, 23:23, 56:17*
**satisfy** [1] - 13:12
**SAUL** [1] - 1:14
**Saul** [1] - 4:7
**save** [2] - 11:22, 11:24
**scenario** [1] - 21:24
**schedule** [2] - 7:6,
*67:10*
**scheduled** [2] - 7:16,
*7:17*
**scheduling** [4] - 7:14,
*7:15, 67:16, 67:19*
**SCHNEIDER** [1] - 1:11
**scientific** [1] - 52:23
**scientist** [1] - 24:13
**scientists** [1] - 52:24
**scope** [1] - 16:5,
*16:9, 16:20, 27:5,*
*27:7, 27:13, 33:1,*
*33:3, 63:4, 64:9,*
*64:12*
**screen** [2] - 18:2,
*61:13*
**se** [1] - 60:21
**Sean** [1] - 5:16
**SEAN** [1] - 2:23
**second** [9] - 7:6, 7:25,

*8:10, 34:7, 49:13,*
*54:25, 62:5, 62:6,*
*66:3*
**Section** [12] - 10:3,
*11:12, 11:24, 12:5,*
*12:11, 13:25, 15:7,*
*15:14, 20:13, 21:19,*
*30:21, 39:19*
**section** [2] - 19:14,
*19:24, 20:16, 21:17,*
*29:11, 30:14, 31:4,*
*62:9*
**sections** [10] - 13:21,
*13:25, 19:24, 46:9,*
*48:9, 52:24, 59:12,*
*62:12, 62:14, 63:13*
**see** [11] - 17:3, 19:5,
*23:4, 29:19, 37:19,*
*38:3, 52:6, 55:11,*
*57:12, 59:11, 66:16*
**seed** [1] - 29:7
**seeds** [3] - 25:14,
*25:15, 25:16*
**seeking** [4] - 12:7,
*17:4, 46:25, 54:10*
**seem** [4] - 20:2, 20:22,
*38:16, 41:4*
**send** [1] - 4:8
**sense** [1] - 24:9
**sent** [1] - 4:10
**sentence** [1] - 34:7
**separate** [4] - 19:14,
*56:13, 56:17*
**September** [1] - 9:15
**served** [7] - 9:6, 9:12,
*9:18, 13:1, 46:24,*
*46:25, 67:6*
**service** [1] - 4:9
**session** [2] - 8:15,
*66:3*
**set** [8] - 9:8, 15:13,
*25:17, 43:10, 50:4,*
*52:14, 64:15, 65:11*
**sets** [4] - 21:19, 57:8,*
*60:21, 65:10*
**setting** [1] - 6:13
**several** [1] - 62:11
**shall** [1] - 7:15
**shaped** [1] - 49:3
**SHARON** [1] - 3:15
**Sharon** [1] - 6:2
**shenanigans** [1] -
*8:24*
**shift** [1] - 48:19
**shoot** [1] - 49:21
**short** [1] - 28:11
**show** [5] - 26:13,
*27:12, 42:12, 61:21,*
*65:5*
**showing** [1] - 42:25*

**shows** [5] - 19:3,
*43:10, 52:8, 62:24,*
*62:25*
**side** [1] - 8:23
**signed** [1] - 56:12
**silent** [1] - 13:13
**similar** [3] - 34:13,
*51:9, 51:11*
**similarly** [1] - 42:10
**simple** [1] - 12:22
**simplify** [1] - 12:18
**simply** [2] - 14:11,
*60:21*
**single** [2] - 17:13, 44:9
**situation** [1] - 6:20
**SIWIK** [1] - 2:2
**skeptical** [1] - 8:16
**skewed** [1] - 28:22
**skill** [14] - 22:15,
*22:25, 23:2, 26:10,*
*27:14, 27:19, 29:8,*
*29:21, 42:23, 64:9,*
*64:12, 64:14, 65:10,*
*65:11*
**skilled** [1] - 33:2
**slid** [1] - 38:13
**slight** [1] - 10:8
**sneak** [1] - 44:20
**solvates** [1] - 25:5
**someone** [3] - 7:18,
*26:4, 49:13*
**somewhere** [3] -
*23:15, 55:3, 55:13*
**sorry** [4] - 18:17,
*39:17, 53:17, 61:20*
**sort** [1] - 12:16
**sought** [1] - 33:6
**sounds** [2] - 15:19,
*57:1*
**specific** [5] - 11:3,
*19:13, 33:24, 37:9,*
*48:8, 62:9, 63:13,*
*63:24*
**specifically** [14] -
*15:20, 16:7, 16:16,*
*17:19, 18:21, 19:12,*
*21:16, 32:21, 34:7,*
*40:17, 42:7, 51:6,*
*51:13, 62:8*
**specification** [8] -
*16:2, 16:5, 26:10,*
*27:9, 32:21, 33:24,*
*33:25, 36:22*
**specifications** [1] -
*22:14*
**speed** [1] - 7:19
**spend** [1] - 22:2
**spirit** [1] - 20:2
**Stahly** [1] - 65:4
**stand** [1] - 42:13

**stand-alone** [1] - 42:13
**standards** [1] - 66:17
**start** [15] - 4:4, 4:20, 6:13, 11:9, 11:18, 11:24, 12:1, 12:5, 12:22, 14:20, 15:24, 32:20, 45:22, 59:12, 65:9
**started** [2] - 15:7, 28:17
**starting** [3] - 19:5, 19:9, 51:18
**state** [3] - 49:12, 55:11, 65:7
**statement** [1] - 35:22
**statements** [1] - 33:13
**STATES** [2] - 1:1, 1:12
**stay** [1] - 67:23
**stenography** [1] - 1:24
**step** [1] - 46:13
**steps** [1] - 43:10
**Stern** [1] - 5:18
**STERN** [1] - 3:2
**STERNE** [1] - 3:8
**Sterne** [1] - 5:23
**Sterns** [1] - 67:2
**Steve** [1] - 5:14
**STEVEN** [1] - 2:19
**still** [3] - 25:22, 26:19, 46:20
**STINSON** [2] - 49:15, 49:20
**Stinson** [1] - 49:15
**straightforward** [2] - 12:2, 30:14
**strategy** [1] - 49:4
**Strawn** [1] - 6:3
**STRAWN** [1] - 3:14
**streamlined** [1] - 47:23
**Street** [2] - 2:3, 3:16
**stricken** [5] - 20:7, 46:6, 46:9, 47:13, 56:5
**strictures** [1] - 9:9
**strike** [8] - 9:4, 12:7, 17:4, 30:7, 47:1, 54:10, 55:5, 66:17
**strikes** [1] - 54:21
**struck** [1] - 47:10
**structure** [1] - 11:1
**Subcategory** [1] - 48:1
**subject** [4] - 6:17, 7:22, 8:12, 31:12
**submissions** [3] - 6:10, 47:12, 65:20
**submit** [2] - 20:1, 43:6

**submitted** [9] - 6:9, 17:9, 17:10, 55:2, 55:3, 55:8, 55:14, 55:19, 56:8
**subparts** [1] - 39:21
**subsections** [3] - 12:10, 13:25, 44:24
**subsets** [1] - 9:23
**substance** [2] - 30:1, 59:14
**substantially** [4] - 37:18, 37:20, 38:8, 38:11
**substantive** [1] - 10:13
**sufficient** [1] - 16:1
**suggesting** [3] - 32:17, 39:12, 48:19
**suit** [1] - 22:14
**Suite** [5] - 1:15, 2:4, 2:17, 2:23, 3:9
**SULLIVAN** [1] - 1:17
**supplemental** [2] - 9:17, 16:15
**supplemented** [1] - 9:14
**support** [5] - 16:9, 37:6, 38:19, 42:1, 62:14
**suppose** [2] - 4:3, 20:9
**supposed** [2] - 61:2, 66:25
**Supreme** [1] - 64:11
**surprise** [1] - 38:3
**surprised** [2] - 23:4, 29:19
**surprising** [3] - 13:6, 24:15, 64:4
**surrendered** [2] - 17:25, 18:1
**survive** [1] - 25:4
**suspect** [1] - 57:4
**swallow** [1] - 26:20
**synthetic** [1] - 43:10
**system** [1] - 50:4

---

**T**

**table** [2] - 52:14, 52:15
**tacking** [1] - 63:11
**TANABE** [1] - 1:3
**teach** [1] - 59:7
**teaches** [2] - 22:21, 42:16
**teaching** [2] - 42:3, 43:3
**teachings** [2] - 43:1, 60:22
**Tech** [1] - 41:16

**technically** [2] - 40:20, 44:8
**techniques** [1] - 36:2
**TELECONFERENCE** [1] - 1:5
**ten** [1] - 61:24
**term** [19] - 14:24, 15:2, 31:10, 31:14, 31:18, 31:22, 33:6, 33:21, 33:23, 34:15, 34:22, 35:3, 36:9, 36:24, 37:12, 37:14, 37:17, 37:20, 38:24
**terms** [4] - 4:21, 57:23
**terrific** [1] - 65:20
**test** [1] - 64:10
**testifies** [1] - 28:1
**testimony** [1] - 32:10
**testing** [4] - 23:6, 23:8, 23:16, 29:20
**textbook** [1] - 53:11
**THE** [2] - 1:1, 1:11
**The court** [156] - 4:1, 4:18, 5:4, 5:6, 6:4, 6:6, 6:9, 6:24, 7:5, 7:7, 7:11, 7:20, 8:5, 8:6, 8:11, 8:16, 8:21, 8:23, 8:25, 9:11, 9:17, 9:24, 10:5, 10:15, 10:22, 11:7, 11:9, 11:18, 11:22, 12:4, 12:6, 12:14, 12:18, 12:20, 13:23, 14:9, 14:13, 14:14, 15:19, 16:23, 17:2, 17:14, 17:17, 18:12, 18:24, 20:3, 20:5, 20:9, 20:19, 20:24, 22:5, 22:10, 23:24, 24:10, 24:20, 24:22, 26:22, 27:21, 27:23, 28:3, 28:6, 28:11, 28:14, 29:23, 30:9, 30:11, 30:17, 30:22, 30:25, 31:1, 31:6, 31:19, 32:5, 32:11, 33:14, 34:4, 34:7, 34:12, 34:25, 35:10, 36:12, 36:16, 36:25, 37:12, 38:6, 39:15, 39:18, 39:22, 41:13, 44:4, 44:22, 45:4, 45:12, 45:17, 45:20, 46:4, 46:5, 46:11, 46:13, 46:19, 46:23, 47:9, 47:10, 47:16, 47:19, 47:25, 49:13, 49:17, 49:24, 50:3, 50:11, 51:20, 51:21, 51:23, 51:25, 52:3,

52:18, 52:22, 53:17, 53:22, 53:25, 54:6, 54:13, 54:18, 54:20, 54:25, 55:10, 55:18, 55:24, 56:3, 56:6, 56:7, 56:15, 56:20, 57:1, 57:4, 57:11, 57:16, 61:23, 62:1, 62:4, 62:16, 63:5, 64:7, 65:18, 65:21, 67:13, 67:15, 67:23, 67:24, 67:25
**theme** [1] - 31:8
**themselves** [4] - 4:12, 36:2, 42:13, 43:24
**theories** [2] - 9:8, 45:6
**theory** [12] - 15:24, 38:21, 38:22, 39:9, 39:13, 39:14, 40:5, 40:23, 42:25, 59:6, 60:19, 61:20
**therefore** [1] - 13:18
**they've** [4] - 25:24, 59:12, 60:6
**thinks** [1] - 36:3
**third** [6] - 7:25, 8:16, 10:3, 63:6, 63:7
**three** [13] - 7:21, 8:25, 9:24, 9:25, 11:10, 11:14, 12:10, 13:24, 13:25, 30:14, 30:25, 45:1, 45:6
**throughout** [5] - 13:3, 31:8, 31:17, 41:9, 44:19
**timing** [1] - 47:3
**titled** [1] - 40:3
**today** [6] - 6:25, 7:5, 11:15, 12:19, 45:3, 66:16
**together** [7] - 12:17, 19:21, 31:1, 45:10, 51:4, 51:18, 58:1
**tolerate** [1] - 17:14
**took** [4] - 19:4, 24:13, 25:25, 27:16
**top** [1] - 21:17
**topic** [1] - 65:14
**Torres** [1] - 5:19
**TORRES** [1] - 3:2
**totally** [2] - 23:18, 29:15
**touch** [1] - 11:3
**TRACY** [1] - 1:17
**train** [1] - 21:3
**transcript** [7] - 1:24, 6:7, 37:4, 37:5, 65:22, 66:12, 68:5
**transcription** [1] - 1:24

**transfer** [1] - 15:5
**Travenol** [1] - 43:15
**TREVOR** [1] - 3:3
**Trevor** [1] - 5:18
**trial** [13] - 7:17, 7:18, 8:8, 9:20, 17:16, 21:11, 57:2, 65:12, 66:5, 66:25, 67:8, 67:17, 67:19
**tried** [1] - 26:4
**true** [1] - 11:16
**try** [11] - 4:8, 12:18, 28:8, 46:8, 48:19, 51:7, 51:10, 54:3, 63:25, 66:12, 66:14
**trying** [5] - 33:8, 36:6, 43:23, 60:3, 66:20
**Tuesday** [1] - 1:10
**tune** [2] - 7:7, 65:24
**turn** [5] - 12:13, 26:1, 34:20, 34:25, 59:9
**turning** [2] - 20:12, 40:1
**Turnpike** [1] - 2:23
**turns** [1] - 26:4
**two** [16] - 6:17, 8:2, 17:5, 21:2, 25:2, 29:15, 41:19, 50:7, 52:25, 53:3, 55:2, 55:21, 56:9, 58:20, 62:1, 64:18, 65:23, 67:13
**type** [1] - 16:6
**types** [1] - 19:16

---

**U**

**ultimately** [2] - 31:15, 55:18
**under** [9] - 6:19, 15:24, 18:4, 30:21, 37:22, 40:4, 40:21, 44:8, 65:15
**undue** [1] - 27:14
**unfortunately** [1] - 47:2
**UNITED** [2] - 1:1, 1:12
**unless** [1] - 7:18
**unlike** [1] - 19:15
**unpackage** [1] - 28:8
**unpredictability** [1] - 25:10
**unpredictable** [1] - 27:18
**unusual** [1] - 21:24
**up** [10] - 8:3, 13:24, 39:18, 50:4, 51:21, 52:7, 57:11, 64:4, 65:12, 67:1
**URQUHART** [1] - 1:17

**USA** [1] - 1:7

**V**

**validity** [2] - 59:14, 65:1
**value** [1] - 19:5
**various** [2] - 57:25, 59:7
**varying** [1] - 34:3
**Vero** [1] - 42:7
**versus** [1] - 41:16
**VIA** [1] - 1:5
**view** [11] - 6:15, 7:2, 8:18, 27:2, 28:15, 28:24, 35:8, 38:20, 48:15, 56:24, 66:15
**violate** [1] - 9:9
**violated** [1] - 8:13
**violation** [1] - 38:4
**voiced** [1] - 67:4
**voluminous** [1] - 53:10

**W**

**wait** [1] - 5:5
**waited** [1] - 8:17
**waiting** [1] - 31:25
**walk** [1] - 51:19
**WALLACK** [1] - 2:9
**Wallack** [1] - 5:8
**Wands** [1] - 25:8
**wants** [2] - 4:3, 6:24
**warning** [1] - 13:19
**Washington** [2] - 3:10, 3:16
**waste** [4] - 8:1, 8:4, 9:2, 14:12
**water** [7] - 34:3, 34:18, 35:11, 35:20, 35:25, 37:13
**ways** [2] - 58:5, 61:13
**weeks** [4] - 18:1, 23:14, 23:19, 47:4
**weight** [1] - 28:25
**Welch** [1] - 5:18
**WELCH** [1] - 3:3
**well-known** [2] - 42:16, 42:18
**West** [2] - 2:3, 3:6
**wherein** [1] - 67:4
**white** [1] - 14:15
**whoever's** [1] - 6:5
**whole** [8] - 15:23, 33:4, 33:20, 34:21, 35:8, 35:14, 36:5, 60:9
**WILLIAM** [1] - 1:14
**wind** [1] - 10:20

**WINSTON** [1] - 3:14
**Winston** [1] - 6:2
**wish** [1] - 21:9
**wishes** [2] - 10:25, 16:12
**withdraw** [3] - 59:25, 63:1, 63:2
**withdrawing** [2] - 60:7, 60:10
**WITHERS** [1] - 2:19
**Withers** [1] - 5:15
**WO** [4] - 40:5, 40:12, 42:12, 42:15
**Wolfson** [2] - 66:24, 67:8
**WONG** [1] - 3:15
**Wong** [1] - 6:2
**word** [4] - 31:10, 31:11, 38:24, 44:5
**words** [1] - 27:24
**worried** [1] - 54:6
**wrap** [1] - 57:11
**wrinkles** [1] - 67:13
**write** [1] - 7:12
**written** [24] - 12:11, 13:10, 13:12, 13:14, 13:20, 14:2, 14:3, 14:5, 15:13, 16:1, 16:9, 16:18, 16:20, 18:5, 19:15, 19:18, 19:19, 19:22, 20:8, 20:9, 20:13, 20:17, 52:24, 65:20

**X**

**x-ray** [1] - 16:7

**Y**

**year** [2] - 23:14, 49:6
**York** [3] - 1:20, 3:4, 3:9
**Youngelson** [3] - 5:12, 5:13, 5:14
**YOUNGELSON** [2] - 2:15, 2:16

**Z**

**Zydus** [3] - 2:24, 3:4, 5:17